In re Jerold Lee TAYLOR,
Sr., et al., Debtors.

Jerold Lee TAYLOR, Sr.,
et al., Plaintiffs.

v.

ILLINOIS STUDENT ASSIST. COM.,
ET AL., Defendants.

Bankruptcy No. 95–3040.
No. 94–32989.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

April 3, 1996.

Bradford Bailer, Kenton, OH, for Plaintiffs.

Richard F. Scott, Hollywood, FL, for Florida Dept. of Education.

Matthew Thompson, Columbus, OH, for Ohio Student Aid Commission.

David H. Hershman, Chicago, IL, for Illinois Student Assistance Commission.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on Complaint to Determine Dischargeability of a Debt Under 11 U.S.C. § 523(a)(8)(B). This Court has reviewed the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the entire amount of the Plaintiffs' student loan debt should be discharged.

## FACTS

Debtors, Jerold Taylor Sr. and Blanche Taylor (hereafter "Mr. Taylor" and "Mrs. Taylor"), filed for Bankruptcy under Chapter 7 of the Bankruptcy Code and are the Plaintiffs in this adversary proceeding. Debtors seek to have their student loans discharged pursuant to the undue hardship provision of § 523(a)(8)(B). Defendants Illinois Student Assistance Commission (hereafter "I.S.A.C.") and Florida Department of Education (hereafter "F.D.E.") object to the discharge of such loans and a trial was held. The Debtors are currently married and have no dependents.

Mr. Taylor has been employed in the manufacturing industry since January of 1991 and after two years of hourly employment is currently holding a management position. He earns approximately Thirteen Thousand Three Hundred Dollars ($13,300) a year. However, his yearly income over the past three years has steadily decreased while his expenses have increased. The Debtors do not own real estate, stocks, bonds or trust funds. The only assets the Debtors own are two automobiles, several bank accounts totaling approximately One Hundred and Fifty Dollars ($150.00), and their personal possessions. Mrs. Taylor is unemployed.

Mr. Taylor is fifty-eight years old and has a bachelor of arts degree in business and marketing. He also has work experience in quality control management in the products manufacturing field. Furthermore, he testified that over the past two years he has submitted approximately one hundred and fifty resumes to prospective employers but has been unsuccessful in upgrading his employment. Mr. Taylor attributed these failures to his age and the limited number of opportunities in his field in the surrounding area.

Mrs. Taylor is fifty-nine years old and her education includes an Associates Degree as well as Bachelor of Science and Masters degrees in business. She also has work experience in real estate management. Attempting to use her education, Mrs. Taylor opened a small business in August of 1990 which proved to be unsuccessful and ultimately caused the Debtors' significant financial loss. This financial misfortune included the loss of Mr. Taylor's entire retirement fund. Mrs. Taylor further testified that she has been seeking employment by submitting resumes to potential employers and until re-

cently had been registered at unemployment services. Despite several interviews, she has been unsuccessful in obtaining employment. Mrs. Taylor attributes these failures to her age and extensive health problems.

Mr. and Mrs. Taylor both experience health problems. Mr. Taylor has spinal arthritis that causes him discomfort in his neck and back area. However, this ailment is still in the diagnostic stage and it does not permanently prohibit him from working. Mrs. Taylor's health is more problematic. Mrs. Taylor recently suffered a mild heart attack. Furthermore, she incurred a permanent wrist injury, suffers from ruptured discs in her back, hypertension, high blood pressure, and swelling of the feet. She believes that her health is on the decline although her doctor has not given her specific work limitations.

Mr. Taylor borrowed Thirteen Thousand Eight Hundred and Eighty Dollars ($13,880) in student loans throughout the mid 1980's. He currently owes Twelve Thousand Dollars ($12,000). He began making payments on his loans in 1988 and paid Eighty Seven Dollars ($87.00) a month for approximately two years. He stopped making payments in late 1990, though his 1992 income tax return totaling Five Hundred and Twenty Dollars ($520.00) was seized in an attempt to satisfy a portion of his indebtedness. Despite being unable to make payments, Mr. Taylor did stay in contact with I.S.A.C.

Mrs. Taylor owes Twenty Two Thousand One Hundred and Fifty Nine Dollars and Sixty Three Cents ($22,159.63) in student loans to F.D.E. The record does not show that any payments were made on her student loans. The Debtors filed for bankruptcy approximately seven years after their student loans became due. Moreover, Mr. and Mrs. Taylors' student loans constitute eighty-nine percent (89%) of their total indebtedness.

*LAW*

The Bankruptcy Code provides in pertinent part:

**11 U.S.C. 523. Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228(a), 1128(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—

(B) excepting such debt from discharge under this paragraph will impose undue hardship on the debtor and the debtor's dependents.

*DISCUSSION*

This case concerns the determination of the dischargeability of a debt, and thus constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Debtors are seeking to have their loans discharged pursuant to 11 U.S.C. § 523(a)(8)(B). Under this subsection, Debtors' educational loans will be excepted from discharge only if payment will impose an undue hardship on the Debtors and the Debtors' dependents. In the past, this Court has used a three prong test in determining undue hardship. *Gammoh v. Ohio Student Loan Commission*, 174 B.R. 707 (Bankr.N.D.Ohio 1994); *Woyame v. Career Education & Management*, 161 B.R. 198 (Bankr.N.D.Ohio 1993); *Silliman v. Nebraska Higher Education Loan Program*, 144 B.R. 748 (Bankr.N.D.Ohio 1992); *Bakkum v. Great Lakes Higher Education Corporation*, 139 B.R. 680 (Bankr.N.D.Ohio 1992); and *In re Hawkins*, 139 B.R. 651 (Bankr.N.D.Ohio 1991). The undue hardship analysis is composed of three prongs: a mechanical test, a good faith test and a policy test. *Id.*

■ This Court will use this three prong test in determining the dischargeability of the Debtors' educational loan obligations. Under the mechanical prong of this test the court considers the debtor's present employment and income, capacity for future employment and income, marketability of debtor's work skills, debtor's health, level of education and family obligations. *In re Gammoh*, 174 B.R. 707, 710 (Bankr.N.D.Ohio 1994); *In re Frech*, 62 B.R. 235, 240 (Bankr.D.Minn.1986).

■ Applying the mechanical test to the facts of this case, the Debtors' present employment and income coupled with their increasing expenses indicate that the their financial situation is precarious. Mr. Taylor is fifty-eight years old and beginning to experience health problems. Mrs. Taylor is fifty-nine years old and is currently suffering from extensive health problems as well. Furthermore, though Mr. Taylor is working, he earns approximately Thirteen Thousand and Three Hundred Dollars ($13,300) a year. His income has steadily decreased over the past three years. Moreover, testimony was offered showing that the Debtors' expenses have increased over that period of time. These expenses include rent, auto insurance, health insurance, utilities, food, medical expenses and taxes. In addition, Debtors have very few assets. The Debtors' poor financial situation is further aggravated by the fact that they are both advancing in age and in 1990 invested Mr. Taylor's entire retirement fund, approximately Eleven Thousand Dollars ($11,000), into a small business which proved to be unsuccessful. Furthermore, Mrs. Taylor is currently unemployed.

The Debtors' capacity for future employment and income is tenuous. Despite the Debtors' level of education, the opportunities for advancing their financial situation in the future are not encouraging. The prospect of Mr. Taylor increasing his salary either through new employment opportunities or a promotion at his current job is not promising. He testified that over the past two years he has submitted approximately one hundred and fifty resumes to prospective employers but has been unsuccessful in upgrading his employment. Although the Court realizes that distribution of resumes is not the exclusive means of seeking new employment, it does show some effort on Mr. Taylor's behalf to obtain a higher paying occupation. Furthermore, Mrs. Taylor also has been unsuccessful in obtaining employment despite efforts to do so. She testified that despite submitting resumes, registering at unemployment services, and actually receiving several interviews, she has been unable to obtain employment. She further testified that she attributes this failure to her advanced age and health problems.

Based on the examination of the Debtors' current and prospective future income and expenses as well as their age and increasing health concerns, it is evident that the Debtors' present inability to pay the loans is likely to continue for an extended period of time. Therefore, excepting the Debtors' loans from discharge under the mechanical prong of the three part test would cause the Debtors' financial situation to continue on a downward spiral.

■ The second prong of the test relies on the good faith of the Debtors. Under this prong, the court takes into account whether the debtor made a good faith effort to repay the loan, to renegotiate the loan, or to minimize expenses and maximize income. *In re Gammoh,* 174 B.R. 707, 710 (Bankr.N.D.Ohio 1994); *In re Holzer,* 33 B.R. 627, 631 (Bankr. S.D.N.Y.1983). In the case at bar, Mr. Taylor testified that in 1988 he began making payments on his loans and continued to do so for approximately two years. Mr. Taylor further testified that he was paying Eighty Seven Dollars ($87.00) a month throughout that time period. Moreover, even when he was unable to continue making payments on his loans in late 1990 because of financial constraints he did stay in contact with I.S.A.C. This continued effort by Mr. Taylor is evidence that he had no intentions of escaping his loan obligation. Considering the Debtors' poor financial condition, the efforts made by Mr. Taylor to repay his student loans show a minimum effort by the Debtors to repay their student loans despite the fact that Mrs. Taylor was unable to make any payments on her student loans. This Court is not implying that efforts by one spouse to repay individual loan obligations necessarily reflects a good faith effort by the other spouse. However, this Court does conclude that in this particular case, the couples' efforts to repay some of their loans leans toward a minimum showing of good faith, considering the combined financial condition of the couple.

The evidence submitted with regards to the Debtors' budget shows that the Debtors have made efforts to minimize their expenses. The Debtors' list of expenses in-

clude only those basic necessities needed in order to maintain a modest lifestyle. The majority of the Debtors' income is absorbed by expenses such as rent, insurance, utilities, food and medical expenses. Although this Court agrees with the concern of I.S.A.C. and F.D.E. that Debtors' weekly cigarette expense is wasteful in both the long and short term, the Debtors' budget does not indicate any excessive spending by the Debtors on entertainment or unnecessary luxuries. The Debtors have also made efforts to maximize their income. Mr. Taylor has been actively seeking employment at a higher wage while Mrs. Taylor has made efforts to obtain employment. For the foregoing reasons, the Debtors have made a minimum showing of good faith required under the good faith prong of the undue hardship test. This, combined with the Debtors' strong showing of undue hardship under the mechanical test, leans toward the conclusion that the Debtors' student loans should be dischargeable.

 The final prong of the undue hardship analysis is the policy test. Under this prong, the court considers whether discharge of a particular student loan in bankruptcy would constitute an abuse of the bankruptcy process and would therefore frustrate Congressional policy. The debtor's circumstances must be examined in the public policy context which courts have found relevant to dischargeability of student loans. The logic of these policies has been questioned, and their usefulness may be limited, but the Court will nevertheless analyze the Debtors case under the policy prong of the test. *In re Bakkum,* 139 B.R. 680, 683 (Bankr. N.D.Ohio 1992); *In re Conner,* 89 B.R. 744, 749 (Bankr.N.D.Ill.1988). The purpose of the Bankruptcy Code is to provide insolvent debtors "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). Congress carved exceptions from this general policy of discharge based upon the conclusion that the public policy at issue, availability and solvency of educational

loan programs for students, outweighs the debtor's need for a fresh start. *In re Weiner Merchant,* 958 F.2d 738, 740 (6th Cir.1992). The denial of the discharge of student loans absent a showing of undue hardship was intended by Congress to "remedy an abuse by students who, immediately upon graduation, filed petition for bankruptcy and obtained discharge of their educational loans." *Id.* at 740.

 In the case at bar, the Debtors' student loan obligations constitute eighty-nine percent (89%) of their total indebtedness in bankruptcy. However, the Debtors did not immediately file for bankruptcy upon graduation. The evidence shows that the educational loans became due in 1989 and the Debtors made payments for approximately two years on those loans. Furthermore, the Debtors did not file for bankruptcy until March of 1995, approximately seven years after the loans initially became due. Discharging the Debtors' loans under these circumstances will not frustrate Congressional policy because the Debtors' current and future financial situation is insecure, coupled with the fact that the Debtors have made a good faith effort to minimize expenses and repay the educational loans. These factors outweigh the fact that the student loans constitute a high percentage of their total debt in this case. If the Debtors' financial situation were more promising or the Debtors had filed for bankruptcy within a shorter period of time after graduation, the loans clearly would be nondischargeable. However, based on the facts of the instant case, the policy test does not require a conclusion contrary to that reached under the mechanical and good faith tests.

The Court has weighed the potential hardship which might be inflicted on the Debtors; the actions of the Debtors in addressing their loan obligations; the Debtors financial status; and the relevant law and policy considerations. Based on these considerations, the Court finds that the Debtors' student loan obligations are dischargeable.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regard-

less of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the student loans of Jerold Lee Taylor, Sr. and Blanche Delphine Taylor be, and are hereby, determined *DIS-CHARGEABLE.*