**In re Deneen A. GREEN, Debtor.**

**Deneen A. Green, Plaintiff,**

**v.**

**Sallie Mae Servicing Corporation and Great Lakes Higher Education Corporation, Defendants.**

**Bankruptcy No. 98–3295. Related No. 98–34947.**

United States Bankruptcy Court, N.D. Ohio.

June 18, 1999.

---

Cherrefe A. Kadri, Toledo, OH, for plaintiff.

Sallie Mae Svc. Center, c/o Loan Svc. Center, Lawrence, KS, for defendant.

Lloyd J. Blaney, Madison, WI, for defendants.

Lloyd J. Blaney, Madison, WI, for defendants.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to Determine the Dischargeability of a Student Loan Debt owed to the Defendants. At the Trial, the Parties were afforded the opportunity to present evidence, and any arguments that they wished the Court to consider in reaching its decision. This Court has now reviewed the arguments of counsel, the evidence presented at Trial, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's repayment of the Student Loan Debt would constitute an undue hardship, and therefore the Plaintiff is entitled to have her Debt to the Defendants discharged pursuant to 11 U.S.C. § 523(a)(8).

## FACTS

The Plaintiff/Debtor in this action, Deneen A. Green (hereinafter Ms. Green), attended Kent State University from 1991 to 1995, majoring in sociology. To help Ms. Green finance her education, Ms. Green obtained financial aid in the form of a Stafford Subsidized Student Loan, in all incurring over Twenty-five Thousand dollars ($25,000.00) in educational debt. However, soon after graduating from Kent State, Ms. Green began to encounter financial difficulties, which eventually resulted in Ms. Green filing for relief under Chapter 7 of the United States Bankruptcy Code. In her Bankruptcy Petition, which was filed on November 9, 1998, Ms. Green listed the educational debt she incurred at Kent State along with another Twenty-three Thousand Three Hundred Ninety dollars ($23,390.00) in unsecured debt. Ms. Green, however, did not list any secured or priority obligations in her bankruptcy schedules. At the time of Ms. Green's bankruptcy petition, Ms. Green had made three payments on the student loan debt of approximately Six Hundred dollars ($600.00). However, due to interest and other charges that had accrued since the note first became due, the total outstanding balance on the obligation stood at Twenty-nine Thousand One Hundred Seventy-two dollars ($29,172.00).

Thereafter, on December 4, 1998, Ms. Green brought an adversary action in this Court against the Defendants, Sallie Mae Servicing Corporation and Great Lakes Higher Educational Corporation, the latter of whom as the purported assignee of Ms. Green's student loan note handled all of the legal aspects of this case (hereinafter Great Lakes), seeking to have the debt

discharged under § 523(a)(8) on the basis that excepting the loan from discharge would impose upon her an undue hardship. More precisely, Ms. Green asserts that she does not have the ability to pay the student loan debt because of a psychological disorder which makes it extremely difficult for her to obtain, and thereafter retain, any full-time and permanent employment. Great Lakes, although conceding that Ms. Green does not have the present ability to pay her student loan debt, asserts that it is too early to grant a hardship discharge as Ms. Green may be able to obtain, at some point in the future, permanent and full time employment, thereby giving her the ability to repay the debt. On May 12, 1998, this Court held a trial on the matter at which time the following factual information was presented to the Court:

Ms. Green is twenty-seven (27) years of age and in generally good physical health. In addition, Ms. Green is currently single with no dependents and lives alone.

While a student at Kent State University, Ms. Green began to experience psychological problems, and in 1996, Ms. Green was formally diagnosed as having a condition known as bipolar disorder, which is commonly referred to as manic depression. This condition is serious enough to cause Ms. Green to experience auditory hallucinations, and on at least two separate occasions Ms. Green's condition became so acute that she had to be hospitalized, the most recent episode occurring during March and April of 1998. At the present time, Ms. Green's psychological condition is under control through the use of various medications which have been prescribed to her; however, according to Ms. Green's own testimony, these medications make it very difficult for her to think clearly, which in turn makes it difficult for her to perform her job duties.

Since graduating from Kent State University in 1995, Ms. Green's employment history has been sporadic. The evidence presented at trial reveals that Ms. Green has only been employed on a temporary basis, and in no job has Ms. Green managed to rise beyond an entry level position. In fact, just recently Ms. Green was laid-off from a job assignment with the Ohio Bureau of Employment Services (OBES), and quit a job with the Burger King Corporation. Further, evidencing Ms. Green's sporadic employment history are Ms. Green's income tax returns for the past two years which show a gross income of only Three Thousand Two Hundred Eleven and ²¹⁄₁₀₀ dollars ($3,211.21) for the year 1997, and a gross income of only Eight Thousand Eight Hundred Fifty-seven dollars ($8,857.00) the year 1998.

At the present time, Ms. Green is employed, but only works about twenty (20) hours per week as a sales clerk earning $5.25 per hour. Thus, Ms. Green's current gross monthly income is approximately Four Hundred Fifty dollars ($450.00). However, on the other side of the equation, Ms. Green testified that after taking into account the discharge she received from this Court on her other unsecured debts, that the following itemized list accurately reflects her current monthly expenses:

| | |
|---|---|
| Rent | $350.00 |
| Telephone | $ 35.00 |
| Food | $100.00 |
| Clothing | $ 15.00 |
| Laundry | $ 20.00 |
| Medical | $ 85.00/including medication(s) |
| Gas | $ 30.00 |
| Entertainment | $ 15.00 |
| Auto Ins. | $ 70.00 |
| Renter Ins. | $ 10.00 |
| Life Ins. | $ 8.00 |
| Total | $738.00 |

In addition, Green, if not granted a hardship discharge in this proceeding, will be obligated to pay an additional Two Hundred Fifty-three and 89/100 dollars ($253.89) per month, for a period of twenty (20) years, on the student loan debt at issue.

However, notwithstanding the difficulties Ms. Green has encountered in finding and then retaining full-time permanent employment since graduating from Kent State University, Ms. Green testified that she continues to actively pursue possible

employment opportunities. In support of this assertion, Ms. Green introduced into evidence recent letters that she has sent to potential employers as far away as Georgia, along with the corresponding rejection letters that she has received in return. In addition, Ms. Green testified that she is currently registered with a temporary employment agency to do clerical work, but has yet to receive a work assignment. Finally, Ms. Green testified that to help supplement her income, she is presently attempting to collect unemployment insurance and SSI, but does not yet know if she will be eligible for either.

All exhibits offered by the Plaintiff into evidence were received by the Court without objection.

## LAW

The Bankruptcy Code, as amended by the Bankruptcy Reform Act of 1994, provides in pertinent part:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

## DISCUSSION

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

■ The bankruptcy laws of the United States were promulgated on the basis of providing a fresh start to the honest but unfortunate debtor, and to effectuate this goal a presumption is afforded to the honest debtor that all debts are dischargeable. *Brown v. Felsen,* 442 U.S. 127, 128, 99 S.Ct. 2205, 2207, 60 L.Ed.2d 767 (1979), quoting, *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717, 719 (1915) (nondischargeability should be confined to those plainly expressed). However, for reasons of public policy, Congress chose to exclude certain types of debts from the umbrella of a bankruptcy discharge notwithstanding that the unfortunate debtor had the sincere intention of repaying the debt at the time it was incurred. Specifically relevant to this case is that in 1976, as part of the Education Amendments of 1976.[1] Congress decided that, with a certain few exceptions, loans incurred for the purpose of financing a higher education would be excepted from a bankruptcy discharge. This restriction on the dischargeability of student loans was subsequently carried over to the Bankruptcy Code by the Bankruptcy Reform Act of 1978.[2]

■ The underlying policy basis for excepting student loans from a bankruptcy discharge was the perceived need to rescue the student loan program from insolvency, and to also prevent abuse of the bankruptcy system by students who finance their higher education through the use of government backed loans, but then file bankruptcy petitions immediately upon graduation even though they may have or will soon obtain well-paying jobs, have few

---

1. *See* Pub.L. No. 94–482 § 439(A), 90 Stat. 2081, 2141 (codified as amended at 20 U.S.C. § 1087(3) (1994)).

2. On November 26, 1978, the President signed the Bankruptcy Reform Act of 1978, Public Law 95–598. Title I of the Reform Act, codified as Title II, U.S.C., became effective October 1, 1979.

other debts, and have no real extenuating circumstances to justify discharging their educational debt. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Pt. II 140, n. 14 (1973); *Law v. Educational Resources Institute, Inc. (In re Law)*, 159 B.R. 287, 291 (Bankr. D.S.D.1993); Raymond L. Woodcock, *Burden of Proof, Undue Hardship, and Other Arguments for the Student Debtor Under 11 U.S.C. § 523(A)(8)(B)*, J.C. & U.L. 377, 381–84 (1998). However, notwithstanding these policy concerns, Congress also realized that not all student debtors abused the bankruptcy system, and that some student debtors were in true need of bankruptcy relief. Thus, Congress determined that an absolute bar to the dischargeability of student loan debts would be too harsh, and also unnecessary to effectuate the foregoing policy goals. Consequently, unlike other types of debt, such as alimony and child support for which a debtor cannot at all receive a bankruptcy discharge, Congress permitted student loan debts to be discharged if the debtor could demonstrate extenuating circumstances. Specifi-

cally, Congress provided that a debtor who finances his or her higher education may seek to receive a bankruptcy discharge on an educational loan if the debtor can demonstrate that excepting the debt from discharge would impose an "undue hardship" on the debtor and the debtor's dependents.[3] 11 U.S.C. § 523(a)(8).

▮ The phrase "undue hardship," however, is not actually defined by the Bankruptcy Code, and thus to actually determine if a situation presents an undue hardship, the courts have fashioned and endorsed a variety of tests.[4] Foremost among the tests employed by the bankruptcy courts to determine when a given set of circumstances will constitute an undue hardship under § 523(a)(8) is the test first developed by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir.1987), where the Court held that a debtor may only receive a hardship discharge on his or her student loans if all of the following factors are established:

3. Originally, the Bankruptcy Code of 1978 provided that student loans could also be discharged if the loan first became due more than five years before the filing of the bankruptcy petition. In 1990 Congress extended this time period to seven years. However, in 1998 Congress entirely eliminated this exception to nondischargeability so that as of October 8, 1998, undue hardship is the only basis on which a student loan may be discharged. Higher Education Amendments of 1998, Pub.L. No. 105–244, 122 Stat. 1837 (codified as amended in 11 U.S.C. § 523(a)(8)).

4. Essentially four different tests have been developed by the bankruptcy courts to determine whether a given set of factual circumstances presents an issue of undue hardship. The first test is the Johnson Tripartite Test where the court developed a three-prong test consisting of (1) a mechanical test of income and expenditures, (2) a good faith test, and (3) a policy test, to determine the dischargeability of a student loan debt. *Pennsylvania Higher Education Assistance Agency v. Johnson (In re Johnson)*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979). The second test is known as the Brunner test, and is explained more fully in the body of this

Opinion. The third test is called the Bryant Poverty Level Test and employs the Federal Poverty Guidelines to determine if a debtor is entitled to an undue hardship discharge. *Bryant v. Pennsylvania Higher Education Assistance Agency (In re Bryant)*, 72 B.R. 913 (Bankr.E.D.Pa.1987). The final test employed by the courts under § 523(a)(8) is essentially a totality of the circumstances test whereby the courts scrutinize each case individually and then determine, based upon all the factors present in the case, whether the debtor is entitled to an undue hardship discharge. *See, e.g., Ford v. Tennessee Student Assistance Corp. (In re Ford)*, 151 B.R. 135, 138–40 (Bankr.M.D.Tenn.1993); *Johnson v. USA Funds, Inc. (In re Johnson)*, 121 B.R. 91, 93 (Bankr.N.D.Okla.1990). In some past cases this Court has applied the Johnson Tripartite Test. *See, e.g., Taylor v. Illinois Student Assist. Com. (In re Taylor)*, 198 B.R. 700, 704 (Bankr.N.D.Ohio 1996). However, given the Sixth Circuit Court of Appeals' recent disapproval of the policy test contained therein, the Court declines to utilize the Johnson Tripartite Test. *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 n. 5 (6th Cir.1998).

(1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

These factors have become to be known as the Brunner test, and in *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), the Sixth Circuit Court of Appeals found it appropriate for a bankruptcy court to utilize this test to determine if the factual circumstances of a case present an issue of undue hardship.[5] Nevertheless, the Sixth Circuit Court of Appeals has declined to officially adopt this test or any other specific test, and instead considers it appropriate for a bankruptcy court to consider other relevant factors depending on the unique circumstances of each individual case. *Id.* at 437; *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir.1996). Therefore, in accordance with the above-mentioned decisions rendered by the Sixth Circuit Court of Appeals, this Court will apply the Brunner test to the case at bar; however, where and if appropriate, the Court will also take into account extraneous factors which are not specifically delineated in the Brunner test. In undertaking this analysis, the Court notes that since the issue of undue hardship is an affirmative defense to the issue of nondischargeability, it is the Debtor, Ms. Green, who bears the burden to establish, by a preponderance of the evidence, that the circumstances of her case constitute an undue hardship. *Dolph v. Pennsylvania Higher Education Assistance Agency (In re Dolph)*, 215 B.R. 832, 837 (6th Cir. BAP 1998); *Gammoh v. Ohio Student Loan Comm'n (In re Gammoh)*, 174 B.R. 707, 710 (Bankr.N.D.Ohio 1994).[6]

■■■ The first prong of the *Brunner* test requires a determination of whether the debtor is "capable of paying the loan[ ] while maintaining a minimal standard of living." *Cheesman*, 25 F.3d at 359. In this case, Great Lakes does not contest that this requirement is satisfied, given the fact that Ms. Green currently has at least Seven Hundred Thirty-eight dollars ($738.00) in monthly expenses, exclusive of the student loan payment, while only having a gross monthly salary of approximately Four Hundred Fifty dollars ($450.00). Additionally, this Court, upon taking its own evaluation of the situation, agrees with this assessment, noting that none of Ms. Green's expenses seem extravagant or unnecessary. For example, Ms. Green only listed a monthly food budget of One Hundred dollars ($100.00) per month which seems very low to the Court. Furthermore, the Court also observes that Ms. Green currently has no exempt assets which could be liquidated to repay the student loan. *See Dolph*, 215 B.R. at 836.

The second part of the Brunner test requires a showing that there exist additional circumstances which show that the debtor's financially distressed state of affairs will persist for a significant part of the repayment period. *Mitchell v. U.S. Dep't Education (In re Mitchell)*, 210 B.R. 105, 108 (Bankr.N.D.Ohio 1996). It is this prong of the Brunner test which ensures

---

5. In addition, the Bankruptcy Appellate Panel for the Sixth Circuit has applied the Brunner test. *Dolph v. Pennsylvania Higher Educ. Assistance Agency (In re Dolph)*, 215 B.R. 832, 836 (6th Cir. BAP 1998).

6. It should be noted, however, that the creditor bears an initial burden to prove the actual existence of the student loan debt, and that the loan is owed to, insured by, or guaranteed by a governmental agency or nonprofit institution. *Halverson v. Pennsylvania Higher Education Assistance Agency (In re Halverson)*, 189 B.R. 840 (Bankr.N.D.Ala.1995). In this case, there is absolutely no dispute that Great Lakes has met its burden of proof with respect to this issue.

that the financial hardship the debtor is experiencing is actually undue. *See Muto v. Sallie Mae (In re Muto)*, 216 B.R. 325, 330 (Bankr.W.D.N.Y.1996). Not surprisingly then, it is this prong of the Brunner test that provides the major contention between the Parties, with Great Lakes asserting that it is too early to grant Ms. Green a hardship discharge given the fact Ms. Green's job search efforts may eventually bear fruit, thereby providing her with the ability to pay the student loan debt. On the other hand, Ms. Green contends that it is unlikely that her financial situation will ever change significantly for the better, given the fact that her psychological condition makes it very difficult, if not impossible for her to find and then retain any full-time employment.

In order to decide the merit of these arguments, two issues must be resolved: First, does Ms. Green's psychological condition actually impair her ability to work; and if it does, will this situation likely persist for a significant portion of the student loan repayment period?

Addressing the first issue, it must be first stated that the Court accepts the view that bipolar disorder, although a treatable illness, can in severe enough cases affect a person's ability to obtain and thereafter retain employment. *See Leatherwood v. Houston Post Co.*, 59 F.3d 533 (5th Cir. 1995) (bipolar disorder may impair the ability of an individual to perform their job duties); *Doherty v. United Student Aid Funds, Inc.*, 219 B.R. 665 (Bankr. W.D.N.Y.1998) (bipolar disorder may present circumstances sufficient to discharge a student loan under § 523(a)(8)); *Taylor v. Phoenixville School Dist.*, 174 F.3d 142 (3rd Cir.1999) (bipolar disorder is a disability under the ADA). Thus, in terms of the first issue, the task for the Court is simply to gauge the seriousness of Ms. Green's psychological condition as it relates to her employability.

The facts of this case clearly show that Ms. Green currently maintains a part-time job, and has for short intervals in the past maintained full-time jobs. However, Ms. Green also presented evidence showing that her psychological condition is serious enough to cause her auditory hallucinations, and to also require her confinement to a hospital on at least two separate occasions. In addition, she also testified that the medication(s) she now takes to keep her condition under control, although beneficial, causes her not to be able to think clearly; a fact which this Court partially observed while she was giving her trial testimony. Consequently, while the Court does not find that Ms. Green is entirely unemployable, the Court, given the foregoing considerations, holds that Ms. Green has met her burden to establish that her psychological disorder is severe enough to significantly impair her present ability to maintain full-time permanent employment.

Thus, having determined that Ms. Green's mental condition currently impedes her employability, the Court must now ascertain whether Ms. Green's psychological disorder will likely impair her ability to work for a significant portion of the student loan repayment period. However, as pointed out by the bankruptcy court in *Kraft v. New York State Higher Educ. Servs. Corp. (In re Kraft)*, 161 B.R. 82, 86 (Bankr.W.D.N.Y.1993), the difficulty with this analysis is that it is by its very nature speculative as it requires a court to predict future events.

The Parties in this case did not present any expert testimony as to Ms. Green's future prognosis. In the absence of such testimony, this Court finds, under the circumstances that exist in this case, that the next best indicator of Ms. Green's future ability to obtain, and thereafter maintain full-time employment comes from trends that have occurred in Ms. Green's past,[7] and with this principle in mind a few matters in Ms. Green's case stand out to

---

**7.** *See Cheesman,* 25 F.3d at 360 (a person's good faith efforts to change their employment

situation, does not thereby automatically denote that the person's situation will change).

the Court: First, since graduating from college and being diagnosed with bipolar disorder, Ms. Green's employment history has been very erratic, this fact being clearly evidenced by Ms. Green's inability over the past couple of years to earn any meaningful amount of income. Second, Ms. Green as recently as last year was hospitalized for her mental disorder, and the medication(s) Ms. Green takes to keep her condition under control limit her ability to perform essential job functions. Next, Ms. Green has presented to the Court evidence showing that she has made many attempts to obtain full-time permanent work, but has so far been unsuccessful in this endeavor. Finally, Ms. Green's own testimony exhibits doubts in her ability to obtain permanent and full-time employment so as to enable her to repay her student loan obligation.

Upon examining these past trends *in toto*, the Court finds that Ms. Green will likely continue to experience problems in finding and then retaining full-time permanent employment, and thus Ms. Green's financial difficulties will in all probability persist for a significant portion of the student loan repayment period. Supporting this finding is the case of *Doherty v. United Student Aid Funds, Inc. (In re Doherty)*, 219 B.R. 665, 671 (Bankr.W.D.N.Y. 1998), where the bankruptcy court addressing the issue of bipolar disorder and the dischargeability of student loan debts, conducted an in-depth analysis of the disease and stated as follows:

> judicial notice [is taken] that the most probable near-future for a debtor who suffers from a diagnosed and treated manic-depressive disorder is maintenance of the status quo.

Accordingly, the Court holds that Ms. Green has met her burden of demonstrating that the second prong of the Brunner test is satisfied.

■ The final part of the Brunner test requires an examination of whether the debtor made a good faith effort to repay the loan. Good faith is, of course, both intangible and subjective, and thus to determine its existence requires a court to examine the debtor's actions. In the context of a hardship discharge under § 523(a)(8) all of the following factors have been considered relevant to the determination of whether the debtor did, or did not, act in good faith:

> (1) whether the debtor attempts to repay the debt;
>
> (2) the length of time after the student loan becomes due that the debtor seeks to discharge the debt;
>
> (3) the percentage of the student loan debt in relation to the debtor's total indebtedness;
>
> (4) the debtor's attempts to find suitable employment.

*In re Cheesman*, 25 F.3d at 360; *In re Mitchell*, 210 B.R. at 109; *Taylor v. Illinois Student Assist. Com. (In re Taylor)*, 198 B.R. 700, 704 (Bankr.N.D.Ohio 1996). Applying these factors to the instant case, the Court finds that Ms. Green did, in fact, make a good faith effort to repay the loan. Specifically, the Court notes the following: (1) she made three installment payments, totaling approximately Six Hundred dollars ($600.00), on the student loan debt; (2) she did not immediately seek to discharge her student loan obligation after it became due; (3) the student loan debt incurred by Ms. Green only constitutes Fifty-five percent (55%) of her total unsecured indebtedness; and (4) the evidence presented at Trial demonstrates that she has made repeated, albeit unsuccessful, attempts to find suitable employment. Accordingly, the Court holds that the circumstances of Ms. Green's case satisfy all the three parts of the Brunner test. However, before concluding, one final issue not considered by the Brunner test must be addressed.

■ The legislative history of § 523(a)(8) indicates that the very nature of an undue hardship discharge is the notion that the circumstances imposing the financial hardship upon the debtor must

occur from factors beyond the reasonable control of the debtor. *Matter of Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993), citing Report of the Commission on the Bankruptcy Laws of the United States at 140 n. 16 (1973). For example, a self imposed financial hardship, such as buying an expensive car, would clearly not constitute a hardship deserving of a bankruptcy discharge. In this case, the Court, after researching the issue of bipolar disorder, concurs with the view articulated by the bankruptcy court in *Doherty*, which stated:

> Bipolar disorder is believed to be of genetic origin [and] is related to the sufferer's neurochemistry. It is not self-induced. Rather, 'we know that … bipolar disorders are associated with chemical changes in the brain and are therefore just as organic as any other disease.'

219 B.R. at 670 (Internal citations omitted). Thus, the Court finds that granting Ms. Green a discharge on account of her mental condition will not go against the Congressional intent of excepting most student loans from a bankruptcy discharge.

In conclusion, the Court, given the totality of circumstances of this case, finds that Ms. Green has met her burden of demonstrating, under the Brunner test, that she is entitled to a hardship discharge under § 523(a)(8). In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the student loans of the Plaintiff, Deneen A. Green, to the Defendants, Sallie Mae Servicing Corporation and Great Lakes Higher Education Corporation, be, and are hereby, determined DISCHARGEABLE pursuant to 11 U.S.C. § 523(a)(8).