In re Sheronda BOYD, Debtor.

Sheronda Boyd, Plaintiff,

v.

U.S. Dept. of Education,
et al., Defendants.

No. 99–3088.

United States Bankruptcy Court,
N.D. Ohio.

April 10, 2000.

John N. Graham, Toledo, OH, Interim Trustee.

Matthew Thompson, Columbus, OH, for Ed. Credit Mgt. Corp.

Gordon R. Barry, Toledo, OH, for debtor.

Ralph Lewis, Toledo, OH, for U.S. Dept. of Ed.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine the Dischargeability of certain Student Loan Debts issued by the Defendants. At the Trial, the Parties were afforded the opportunity to present evidence and any arguments that they wished the Court to consider in reaching its decision. This Court has now reviewed the written arguments of counsel, the evidence presented at Trial, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's repayment of the student loan debts would not impose an undue hardship, and therefore, the loans are nondischargeable pursuant to 11 U.S.C. § 523(a)(8). However, the Court finds, based upon the equities of the situation, that the Plaintiff is entitled to have the interest, that has accrued and that will accrue on the student loan obligations since they first became due, discharged pursuant to this Court's power under 11 U.S.C. § 105(a).

### FACTS

Sheronda Boyd, the Plaintiff and the Debtor in this action (hereinafter referred to as the Debtor), seeks, through the current adversary proceeding, to discharge certain student loan debts owed to the United States Department of Education and Educational Credit Management Corporation (hereinafter referred to as the Creditors). The Debtor alleges that excepting the loans from discharge would impose upon her an undue hardship. More precisely, she asserts that, based upon her current income, she cannot maintain a minimal standard of living if forced to repay the student loans. On the other hand, the Creditors contend that the Debtor has not met her burden of proof that paying off the student loans would constitute an undue hardship within the meaning of 11 U.S.C. § 523(a)(8).

On February 9, 2000, this Court held a trial on the matter, at which time the Court was presented with the following information: Between 1987 and 1995 the Debtor attended the University of Toledo, graduating in December of 1995 with a degree in special education. Her tuition and partial living expenses during her tenure at the University of Toledo were paid for by loans insured by the U.S. Department of Education. Upon graduation, the Debtor secured a job with the Toledo Public Schools, starting her employment in January of 1996. While employed, from 1996 until the end of 1997, the Debtor took fifteen (15) credit hours toward her Masters degree.

Soon after graduating from the University of Toledo, the Debtor began to encounter financial difficulties, which eventually resulted in the Debtor filing for bankruptcy relief under Chapter 7 of the U.S. Bankruptcy Code. In her Bankruptcy petition, which was filed on March 26, 1999, the Debtor listed her educational debts along with another Thirty–Three Thousand Four Hundred Ten and 30/100 Dollars ($33,410.30) in unsecured debt. Both parties stipulated at Trial that the overall amount of financial aid obtained in the form of student loans was Sixty-one Thousand Nine Hundred Eighty-seven Dollars ($61,987.00) exclusive of interest. However, due to interest and the fact that the Debtor has never made one voluntary payment on her student loans, the total outstanding balance on the Debtor's obligation stood, at the time of Trial, at Seventy-eight Thousand Fifty-five and 65/100

Dollars ($78,055.65). Of the original loan amount, Forty-five Thousand Five Hundred and Thirty-two Dollars ($45,532.00) are owed to the United States Department of Education and Sixteen Thousand Four Hundred and Fifty-five Dollars ($16,455.00) are owed to Educational Credit Management Corporation.

Additional facts presented at the Trial have shown that the Debtor, who is thirty-one (31) years of age and in good physical health, is currently single with no dependents and lives alone. At the present time, the Debtor is continuing her employment with the Toledo Public Schools; and she is planning to keep her employment for the foreseeable future. The Debtor also coaches volleyball and basketball for nine (9) months out of a year, for which she receives approximately Five Thousand Dollars ($5,000.00) a year. In addition, in her spare time, the Debtor periodically acquires employment on a part time basis as a nurse's aide.[1]

From the Debtor's employment, her income for 1997 and 1998 was Twenty-nine Thousand Two Hundred Ninety and 86/100 Dollars ($29,290.86) and Thirty-one Thousand Six Hundred Forty-one Dollars ($31,641.00) respectively, with her income for 1999 estimated to be nearly Thirty–Four Thousand Five Hundred and Twelve Dollars ($34,512.00). With regards to expenditures, the Debtor testifies that the following itemized list accurately reflects her current monthly expenses:

| | |
|---|---|
| Rent | $ 400.00 |
| Electric. and heat | $ 180.00 |
| Water and sewer | $ 30.00 |
| Telephone | $ 60.00 |
| Cable | $ 30.00 |
| Food | $ 425.00 |
| Clothing | $ 75.00 |
| Laundry | $ 45.00 |
| Medical | $ 25.00 |
| Transportation (lease) | $ 459.12 |
| Transportation (gasoline) | $ 130.00 |
| Auto maintenance | $ 75.00 |
| Auto insurance | $ 74.00 |
| Entertainment | $ 25.00 |
| Total | $2,033.12 |

With respect to her rather high transportation expense for the lease of a car, the Debtor explained that due to her bad credit report she had been unable to obtain a car in her own name. As a result, two (2) years ago, her sister leased a car in her own name for the Debtor, the lease of which expires in two (2) years from April. After that, the Debtor testified that she hoped to find other car arrangements, so as to reduce her transportation expenses.

All the exhibits offered by the Debtor into evidence were received by the Court without objection.

### LAW

The Bankruptcy Code, as amended by the Bankruptcy Reform Act of 1994, provides in pertinent part:

**11 U.S.C. § 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

**11 U.S.C. § 105. Power of court.**

(a) The court may issue any order, process, or judgement that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to

---

1. The amounts fluctuated. In 1998, it was Four Thousand Nine Hundred Thirty Seven and 61/100 Dollars ($4,937.61); in 1999 it is estimated to be One Thousand Seven Hundred Dollars ($1,700.00).

preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

## DISCUSSION

In the present adversary proceeding, the sole issue before the Court is whether the Debtor is entitled to have her student loans discharged. Under 28 U.S.C. § 157(b)(2)(I) the determination of this issue is core proceeding over which this Court, as a bankruptcy court, has jurisdiction to enter final orders and judgments. 28 U.S.C. §§ 157(a) and 1334.

■■■ Congress chose to exclude loans incurred for the purpose of financing a higher education, with a certain few exceptions, from a bankruptcy discharge. The underlying policy behind this decision was the perceived need to rescue the student loan program from potential insolvency and also to prevent abuse of the bankruptcy system by students who finance their higher education through the use of government guaranteed loans, but later file bankruptcy petitions for the purpose of discharging their educational debt. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, 93d Cong., 1st Sess., Pt. II 140, n. 14 (1973); *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 732–33 (Bankr.N.D.Ohio 1999). However, notwithstanding these policy concerns, Congress also realized that some student debtors were in true need of bankruptcy relief. Therefore, Congress permitted student loan debts to be discharged, if the debtor could demonstrate that repaying the loan will impose an undue hardship upon the debtor and/or debtor's dependents. 11 U.S.C. § 523(a)(8).

■■ The phrase "undue hardship," however, is not actually defined by the Bankruptcy Code. As a result, various judicial tests have been developed. *See Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 733 fn. 4 (Bankr. N.D.Ohio 1999). In *Green,* this Court, in conformity with two decisions rendered by the Sixth Circuit Court of Appeals[2], found it appropriate to employ what has become to be known as the Brunner Test[3] to determine whether a debtor is entitled to an "undue hardship" discharge pursuant to § 523(a)(8). *Id.* at 733–44. Under the Brunner Test, a debtor must establish that the following three elements are in existence in order to receive a hardship discharge on his or her student loan:

(1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans;

(2) additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Educ. Serv. Corp.,* 831 F.2d 395, 396 (2nd Cir. 1987). Furthermore, it is a debtor who bears the burden to establish that each and everyone of the Brunner test elements is met, *Zlotopolski v. Dressel (In re Dressel)* 212 B.R. 611, 616 (Bankr.E.D.Mo. 1997), a burden which this Court finds, for the following reasons, the Debtor has not met. *See also Healey v. Massachusetts Higher Educ. (In re Healey),* 161 B.R. 389, 393 (E.D.Mich.1993) (debtor must establish that her educational loans represent an undue hardship by the preponderance of the evidence).

---

**2.** *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356 (6th Cir.1994); and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d 433 (6th Cir.1998).

**3.** The Brunner Test is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.,* 831 F.2d 395 (2nd Cir.1987).

■ As stated above, the first prong of the Brunner test asks whether a debtor can maintain a minimal standard of living based on current income and expenses if the debtor were required to repay the students loans. *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2nd Cir.1987). In this regard, the Court observes that the Debtor, based upon present income, is currently able to afford a comfortable lifestyle spending approximately Two Thousand and Thirty-three Dollars ($2,033.00) per month. Once more, a careful examination of the Debtor's expenses demonstrates that some expenses could be decreased in order to free up funds for other matters such as paying off the student loan. Namely, it seems excessive for the Debtor, being a single woman with no dependents, to spend Four Hundred Twenty-five Dollars ($425.00) per month on food. Moreover, allocating Sixty Dollars ($60.00) per month for telephone service, Seventy-five Dollars ($75.00) for clothing, and Thirty Dollars ($30.00) for cable does not appear to be either necessary or prudent. Finally, the Court finds it fundamentally unfair that the Creditors should have to pay the Debtor's unreasonably high auto-leasing expenses, the debt of which was discharged in bankruptcy. As a result of these considerations, the Court finds that the Debtor has failed to meet the first prong of the Brunner test.

■ The Debtor has also not met the second prong of the Brunner Test, which asks whether there are additional circumstances, which indicate that the financially distressed state of affairs will persist for a significant part of the repayment period. In reaching this decision, the Court considered the following three factors: First, the Debtor is a young and healthy woman with no dependents. Second, based upon the Debtor's own testimony, it is entirely likely that the Debtor's employment with the Toledo Public Schools will continue for the foreseeable future and periodic pay raises stemming from this employment are likely to occur. Third, the Debtor has already received a discharge on all her general unsecured debts.

■ Finally, with regard to the third prong of the Brunner Test, the Court makes the following two observations: First, the Debtor has never made a voluntary payment on her student loan obligations. Second, the Debtor's student loan debts constitute approximately Seventy (70) percent of her total debt in Chapter 7 bankruptcy. *See Green v. Sallie Mae Servicing Co. (In re Green)*, 238 B.R. 727, 736 (Bankr.N.D.Ohio 1999) (listing factors relevant to the determination of whether a debtor acts in good faith). Given these factors, this Court finds that the Debtor has failed to demonstrate a good faith effort to repay her student loans; and thus, the Debtor's actions have not been in conformity with the third prong of the Brunner Test.

However, notwithstanding the foregoing holding, this Court, pursuant to the decision rendered by the Sixth Circuit Court of Appeals in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, will visit the issue of whether the Debtor is entitled to "some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances." 144 F.3d 433, 440 (6th Cir.1998).

■ Under § 105(a), it is clear that this Court, as a court of equity, has the power to fashion an appropriate remedy, including a partial discharge, of a student loan debt. *Id.* at 438–39. *See also Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 360–61 (6th Cir.1994). In *Hornsby*, the Sixth Circuit Court of Appeals stated: "Although the bankruptcy court should not have discharged the [debtor's] entire student loans, we believe it had the power to take action short of total discharge." 144 F.3d at 438–39 (6th Cir.1998). Nevertheless, § 105(a) should not be invoked by a bankruptcy court lightly. As the bankruptcy court in *In re Charles & Lillian Brown's Hotel, Inc.*, observed, "the court's

utilization of its powers under Code § 105(a) is discretionary..., and must be carefully honed in light of the facts of the case, applicable precedent and appropriate policy." 93 B.R. 49, 54 (Bankr.S.D.N.Y. 1988). As a consequence, merely establishing that a debtor will receive a benefit by a partial discharge of a student loan obligation is insufficient, by itself, to warrant applying § 105(a) because all debtors would in some way benefit by having their student loan debts partially discharged. Instead, a bankruptcy court should only invoke its equitable powers under § 105(a) to partially discharge a student loan debt if it finds that the equities of the situation tip distinctly in favor of the debtor. *Fraley v. U.S. Dept. of Ed. (In re Fraley)*, 247 B.R. 417 (Bankr.N.D.Ohio 2000).

In this regard, the Court notes that the Debtor has shown a good faith effort to increase her income by working two (2) additional jobs and has maximized her annual income by at least Six Thousand and Seven Hundred Dollars ($6,700.00[4]). In addition, the Court observes that given the rather high amount of debt owed in relationship to the Debtor's income, the Debtor, if required to pay the interest on the student loan obligations, will unlikely be able to pay down any significant amount on the principal of the obligations.

Thus, given these considerations, this Court finds that the equities of the situation entitle the Debtor to have the interest that has accrued and that will accrue on her student loan obligations discharged pursuant to this Court's equitable powers under § 105(a). In this regard, the Court is convinced that this remedy allows the Debtor to satisfy her obligation to repay the student loans, while at the same time providing her with some of the benefits a bankruptcy brings in the form of relief from oppressive financial circumstances.

Accordingly, it is

***ORDERED*** that the Plaintiff's student loan obligations to the Defendants are hereby declared to be nondischargeable debts in bankruptcy pursuant to 11 U.S.C. § 523(a)(8).

It is ***FURTHER ORDERED*** that the interest that has accrued, or that will accrue in the future on the Debtor's student loan obligations to the Defendants be, and is hereby, determined to be discharged pursuant to this Court's equitable powers under 11 U.S.C. § 105(a).

It is ***FURTHER ORDERED*** that the Debtor's nondischargeable student loan obligation to the Defendant, the United States Department of Education, is hereby determined to be Forty-five Thousand Five Hundred and Thirty-two Dollars ($45,532.00); and that the Debtor's nondischargeable student loan obligation to the Defendant, Educational Credit Management Corporation, is hereby determined to be Sixteen Thousand Four Hundred and Fifty-five Dollars ($16,455.00).

It is ***FURTHER ORDERED*** that both Defendants provide to the Debtor an address as to where payments on their debts are to be tendered.

It is ***FURTHER ORDERED*** that the Debtor's minimum monthly payment obligation is hereby determined to be Three Hundred Dollars ($300.00), and that this monthly obligation be apportioned between the Defendants as follows: Two Hundred Twenty and 35/100 Dollars ($220.35) per month are to be paid to the United States Department of Education and Seventy-nine and 65/100 Dollars ($79.65) per month are to be paid to the Educational Credit Management Corporation. Such obligations will become due on the first day of every month, commencing upon the Defendants compliance with the above order, and will last until the amounts determined nondischargeable herein are paid in full.

---

4. Coaching—Five Thousand Dollars ($5,000.00) plus nurse's aid income in 1999— One Thousand and Seven Hundred Dollars ($1,700.00).