**In re Donald Orval HARTUNG and Phoebe Margaret Hartung, aka Phoebe Braun Hartung, aka Phoebe Margaret Braun, Debtors.**

**Phoebe M. HARTUNG, Plaintiff,**

**v.**

**UNIVERSITY OF AKRON, Defendant.**

**Bankruptcy No. 580–146.**
**Adv. No. 582–0064.**

United States Bankruptcy Court,
N.D. Ohio.

Dec. 3, 1982.

David Friedman, Barberton, Ohio, for plaintiff.

Ted A. Mallo, Akron, Ohio, for defendant.

### FINDING AS TO DISCHARGEABILITY OF STUDENT LOAN

H.F. WHITE, Bankruptcy Judge.

On January 27, 1982, the Plaintiff (hereinafter referred to as "student") filed a Complaint to Determine dischargeability of a student loan debt due the University of Akron. Said complaint was based upon undue hardship. The University of Akron (hereinafter referred to as the "school") opposed said complaint.

The Court makes the following Finding of Fact and Law concerning the evidence and testimony of the witnesses that appeared before the Court.

### FINDING OF FACT

1. Phoebe M. Hartung, age 44, is married with one son, age 21, living at home.

2. The student enrolled at the University of Akron in the Fall of 1971 and enrolled in the School of Nursing in the Fall of 1972.

3. During the period of 1972–1978, the student withdrew from classes several times because of illness. The student was hospitalized in 1976 and 1977 because of a chronic case of colitis which required her to withdraw from four different courses in the School of Nursing. The student was subsequently readmitted to the University of Akron and received an Associate Degree of Arts on May 24, 1981 and then on May 23, 1982 received an A.A.S. Degree in Respiratory Therapy.

4. During this period of time, the student received various loans from the University of Akron. The principal balance now due is $7,413.91 with accumulated interest as of September 10, 1982 of $333.60, making the total due to the University of Akron on the student loan the sum of $7,747.51.

5. The student applied for readmission to the College of Nursing in August, 1982 but was denied admission as she failed to maintain a grade point average of 2.5, her grade point average being 2.4 (University of Akron Exhibit "C").

6. Student is presently employed at the University Hospital of Cleveland, Ohio as a Respiratory Therapist with a net take-home pay of $450.00 bi-weekly. Her husband is employed with a net take-home pay of $225.00 per week. The student commutes back and forth from Norton, Ohio to Cleveland, Ohio, an approximate distance of 80 miles round-trip per day, in a 1974 Cadillac owned by the Debtor and upon which there is no lien.

7. The Debtor and her husband own a house in Norton, Ohio upon which there is a first mortgage due People's Federal Savings & Loan of approximately $26,000.00. A second mortgage to Beneficial Finance Company of $16,000 is due. Monthly payments on the first mortgage are $290.00. The second mortgage monthly payment is $363.00. The second mortgage is also secured by a 1977 Dodge truck owned by Debtor's husband. The Debtor, her husband, and son live in the premises secured by these mortgages.

8. Debtor's son is not employed but is enrolled as a full-time student at a local beauty college for which the student is paying the son's tuition of $100.00 per month. This expense will terminate in December, 1982, as the son is scheduled to graduate on or about said month.

9. During inclement weather, the student can reside in the residence hall at the University Hospital by paying $30.00 per week. The student indicates that she will ask her employer for part-time work because of the lengthy hours and commuting problems especially during inclement weather.

10. The student indicates that the expenses for her household are: utilities, $250.00; food, $300.00 per month; payments due O'Neil Company and Montgomery Ward, $100.00 per month; gasoline, approximately $50.00 per week; and other miscellaneous expenses such as clothing, insurance, etc. totaling $300.00 per month. Hospitalization is furnished by the employer; but if part-time work is granted, the student must pay her own hospitalization. Her husband's hospitalization does not cover the student.

11. The student is presently under medical treatment for migraine headaches and colitis which results in two office calls per month costing $18.00 per call. Debtor's hospitalization does not cover the office calls.

12. To retire the loan to the University of Akron will require payments amortized over a period of ten years. The first payment was due in April, 1981 and matures in April, 1991. To amortize this loan would now require payments of $85.00 per month. The student has made no payment on the loans.

13. Had the student completed her nursing degree, approximately 75 percent of the loan would have been forgiven had she pursued that occupation. It does appear that in her senior year the student was unable to complete her nursing degree. One of the reasons the student was unable to complete her nursing degree was that due to the number of students in the College of Nurs-

ing in 1977 it would have required an additional two years to complete said degree due to scheduling problems.

## ISSUE

Has student sufficiently presented evidence to show an undue hardship as required under 11 U.S.C. Section 523(a)(8)(B) of the Bankruptcy Code?

## DISCUSSION OF LAW

Student loans are excepted from discharge under 11 U.S.C. § 523(a)(8)[1] unless the debt became due prior to five years before the filing of the petition in bankruptcy or unless excepting the debt from discharge would impose an undue hardship on the debtor or on the debtor's dependents. In the instant case, the debt for the student loan became due in April, 1981 and the bankruptcy petition was filed in February, 1980. Thus, the five year time limitation, after which the debt becomes dischargeable, is not applicable here.

The student claims her student loan debt is dischargeable because excepting it from discharge would impose an undue hardship on her. "Undue hardship" is not defined by the Bankruptcy Code nor is it defined in the legislative history.[2] This court, after considering testimony at the trial, concludes that payment of the student loan debt will not impose undue hardship on the student.

Undue hardship has been found in cases where illness, incapacity, or other extenuating circumstances justify the failure to repay student loans. In *In re Valentine,* 3 Bankr.L.Rep. ¶ 67,042 (CCH) (E.D.Tenn. 1979), the bankrupts, husband and wife, received student loans while attending college. Shortly after the birth of bankrupt's child, the wife contracted a rare disease which created major medical bills and made employment for her impossible. The husband was taking home less in pay than the family needed for living expenses. The court held that, considering the medical problems, this was a situation which called for a hardship exception.

In *In re Sousek,* 3 Bank.L.Rep. ¶ 67,261 (CCH) (E.D.Wis.1979), the debtor was the sole support of herself and her two-year old son who suffered from a heart murmur and required treatment for his condition. Her assets consisted of a few items of furniture, clothing, and a Pinto, valued at $200.00, which she needed to get to work. The court was satisfied that any payment required of the debtor would impose an undue hardship on her and her son and therefore debtor's student loan debt was dischargeable.

In the instant case, the student has physical ailments but they are treated with monthly office calls at minimal expense. The ailments, colitis and migraine headaches, do not prevent the student from maintaining a full-time job in her chosen field as a Respiratory Therapist.

In addition to Debtor's salary, Debtor's husband is also working regularly and contributing to the upkeep of the family. Although Debtor does have a large amount of monthly expenses which must be paid, one of them, her son's tuition, will cease in December. That payment is $100 per month. Thus after December, Debtor will have an additional $100 in her budget with which she can make the $85 monthly payment on her student loan.

Imposing the responsibility of paying the student loan on debtor may be a hardship, in the sense that Debtor may have a difficult time repaying the debt, but it is not an

1. 11 U.S.C. § 523(a)(8) provides:

    A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—

    (A) such loan first became due before five years before the date of the filing of the petition; or

    (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

2. H.R.Rep. No. 595, 95th Cong. 1st Sess. 132–162 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

"undue hardship." As the standard to be met under 11 U.S.C. Section 523(a)(8) is that of "undue hardship" and as Debtor has failed to show that the repayment of this debt will impose an undue hardship upon her, the student loan debt to the University of Akron is nondischargeable.

Therefore, it is the conclusion of this Court that debtor's student loan debt to the University of Akron is nondischargeable in bankruptcy pursuant to 11 U.S.C. Section 523(a)(8).