In re Shawna M. MITCHELL, Debtor.

Shawna M. MITCHELL, Plaintiff,

v.

U.S. DEPARTMENT OF EDUCATION, Defendant.

Bankruptcy No. 95–3264.

United States Bankruptcy Court, N.D. Ohio, Western Division.

Nov. 8, 1996.

Michael S. Jones, Toledo, OH, for Plaintiff.

Ralph Lewis, Toledo, OH, for Defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after trial on the Complaint to Determine Dischargeability of Debt filed by Plaintiff/Debtor Shawna M. Mitchell. At the trial, the parties were afforded the opportunity to present the evidence and make arguments they wished the Court to consider in reaching its decision. This Court has reviewed the written arguments of counsel, evidence presented at trial, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the exception from discharge of the Debtor's student loans at issue in this case does not create an undue hardship as required under 11 U.S.C. § 523(a)(8)(B), and therefore the debt is non-dischargeable.

## FACTS

Between 1986 and 1989, the Debtor attended Stautzenberger College, taking courses in the medical secretary field. Her tuition was paid for by loans insured by the U.S. Department of Education. Debtor was married in July of 1988. The Debtor did not finish her program at Stautzenberger College, but dropped out lacking one credit.

In September of 1989, Debtor began working for Sunshine Cleaning. Debtor's job consisted of janitorial and cleaning services for which she received Five and 25/100 Dollars ($5.25) per hour. Debtor claimed at trial that she made between Thirty-five Dollars ($35.00) and One Hundred and Twenty-four Dollars ($124.00) per week, and averaged around Sixty-five Dollars ($65.00) per week. Debtor worked for Sunshine Cleaning for eight months, then left voluntarily due to pregnancy.

Also in 1989, the Debtor's student loans came due. The terms of the student loans required repayment beginning six months after the Debtor ceased to carry at least half of the normal full time academic load. Debtor believed that she had paid by money order at least Three Hundred Dollars ($300.00) on her loans but had no record of these payments. Debtor received two forbearance on her loan in 1990, due to pregnancy. Her last payment on the loan was on July 11, 1991.

In 1993, after the birth of her second child, Debtor stated that she tried to do cleaning on her own for a few weeks but was unable to continue due to medical problems. However, on cross-examination the Debtor admitted that she never found any work but instead only put up some flyers in an attempt to gain employment.

On April 20, 1995, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. The amount owed to the Defendant U.S. Department of Education is the only debt the Plaintiff was seeking to discharge. At trial, the parties stipulated that the Debtor presently owes a balance of Eight Thousand Two Hundred Eighty-nine and 55/100 Dollars ($8,289.55) on the student loans.

Debtor is presently not employed outside the home. However, Debtor's husband earns an income for the family in the amount of approximately Forty-five Thousand Dollars ($45,000.00) per year. Debtor and her husband have two children, ages six and three. The Debtor also testified that her husband also has other children from another marriage, only one of which is a minor (age seventeen).

The Debtor testified that she experiences a number of ongoing medical problems. These problems include severe nerve disorder, depression, panic attacks, and anxiety attacks. Debtor also stated that she suffers from back problems, carpel tunnel, CNV, and a blood disorder. However, there was no evidence

offered at trial of the Debtor's ailments other than her own testimony.

## LAW

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228[a] 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless-

(B) excepting such debt from discharge under this paragraph will impose undue hardship on the debtor and the debtor's dependents.

## DISCUSSION

■] Pursuant to 28 U.S.C. § 157(b)(2)(I), determinations as to dischargeability of debt are core proceedings. Thus, this case is a core proceeding.

■] A student loan will only be discharged if repaying the loan will impose an undue hardship upon the debtor and/or the debtor's dependents. 11 U.S.C. § 523(a)(8)(B). As the Court in *In re Healey*, 161 B.R. 389, 393 (E.D.Mich.1993), observed:

It is beyond peradventure that requiring repayment of the student loans in the instant case (and, for that matter, in almost any case), imposes a 'hardship' on the debtor. It is more difficult and expensive to honor an obligation than to disregard it, and reimbursement often means that financial resources will either be tight or not available at all for other discretionary activities. However, '[t]he fact that a debtor's budget may be tight for the foreseeable future is the norm rather than the exception.' *In re Bakkum v. Great Lakes Higher Education Corp.*, 139 B.R. 680, 682 (Bankr.N.D.Ohio 1992) (citation omitted). The question for this Court to consider is thus not whether payment of the loans constitutes a hardship (it certainly does), but instead whether that hardship is *un-*

*due. Id.* The phrase 'undue hardship' is not defined by the Bankruptcy Code, however the existence of the modifier 'undue' indicates that Congress deemed 'garden variety' hardship or 'unpleasantness' as an insufficient excuse for the discharge of student loans. *See In re Cahill*, 93 B.R. 8, 13 (Bankr.N.D.N.Y.1988) (citations omitted). Indeed, as one would expect by using common sense, there is a strong legislative policy *against* allowing the discharge of student loans in bankruptcy. *In re Bakkum*, 139 B.R. at 682 (citing H.R.Rep. No. 595, 95 Cong., 1st Sess. 132–33 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787).

161 B.R. at 393 (emphasis in original).

The legal inquiry adopted by the courts in interpreting and applying this exception to discharge has been explained by the Sixth Circuit Court of Appeals:

Courts have used a number of tests in determining what constitutes undue hardship. One test requires the debtor to demonstrate '(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period . . .; and (3) that the debtor has made good faith efforts to repay the loans'. *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2 Cir.1987)

\* \* \* \* \* \*

Other tests have focused on ' "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living" '. *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8 Cir.1981) (citing *In re Wegfehrt*, 10 B.R. 826, 830 (Bankr. N.D.Ohio 1981)).

*In re Cheesman,* 25 F.3d 356, 359 (6th Cir. 1994), *cert denied,* 513 U.S. 1081, 115 S.Ct. 731, 130 L.E.2d 634 (1995).

■ *Cheesman* is the Sixth Circuit Court of Appeals authority on student loans and undue hardship under 11 U.S.C. § 523(a)(8)(B). The Court did not choose any one particular test but apparently applied the test proffered by the Second Circuit Court of Appeals. *Cheesman,* 25 F.3d at 359–360, citing *Brunner,* 831 F.2d at 396. The *Chessman* Court considered whether: 1) the debtor was capable of repaying the loans while maintaining a minimal standard of living; 2) the debtor's financial situation would improve in the future; and 3) the debtor did not act in good faith. *Id.* Each of these factors will be applied to the case at bar in turn.

■ The first factor to be considered is whether the debtor can maintain a minimal standard of living based on current income and expenses for herself and her dependents if the debtor were required to repay the student loans. In the present case, the Debtor is not currently employed outside the home, and appears to have only worked eight months during her adult life. Thus, it is clear that the Debtor is not currently generating any income with which to pay her student loans. However, courts have routinely considered the income of the debtor's spouse when determining whether the debtor's household income and expenses are in such a dire condition that a discharge of student loans is warranted. *In re Ipsen,* 149 B.R. 583, 585 (Bankr.W.D.Mo.1992), citing *Matter of Velis,* 123 B.R. 497, 512 (D.N.J. 1991). See also *Com. of Virginia State Education Assistance Authority v. Dillon,* 189 B.R. 382, 385 (W.D.Va.1995); *In re Fox,* 189 B.R. 115, 119 (Bankr.N.D.Ohio 1995); *In re Garrett,* 180 B.R. 358, 363 (Bankr.D.N.H. 1995); *In re Saburah,* 136 B.R. 246, 255 (Bankr.C.D.Cal.1992); *Matter of Coleman,* 98 B.R. 443, 452 (Bankr.S.D.Ind.1989); *In re Albert,* 25 B.R. 98, 101 (Bankr.N.D.Ohio 1982); *In re Hartung,* 24 B.R. 850, 852 (Bankr.N.D.Ohio 1982); *In re Johnson,* 17 B.R. 95, 99 (Bankr.W.D.Mo.1981); *In re James,* 4 B.R. 115, 119 (Bankr.W.D.Pa.1980).

In the present case, the Debtor's husband makes Forty-five Thousand Dollars ($45,000.00) a year. Additionally, while the Debtor claims that "they are barely making it," her bankruptcy schedules list the family's recreation, clubs and entertainment, newspapers, magazines, etc. cost at Two Hundred Dollars ($200.00) a month. The schedules also list clothing expense as Four Hundred Dollars ($400.00) a month. Furthermore, at trial the Debtor claimed that the family is paying Two Hundred Dollars ($200.00) a month for her step-son's car on which Five Thousand Dollars ($5,000.00) is still owed. In reviewing the household's income and expenses, it is clear to the Court that the Debtor can repay the loans and still maintain a minimal standard of living for herself and her dependents.

The second part of the *Brunner* test is whether there are additional circumstances that show the financially distressed state of affairs will persist for a relevant part of the payment period. *Cheesman,* 25 F.3d at 359, quoting *Brunner,* 831 F.2d at 396. The Debtor claims that she suffers from numerous medical conditions. However, this testimony was uncorroborated by any medical evidence. In *In re Sands,* 166 B.R. 299, 311 (Bankr.W.D.Mich.1994), the Court stated that when the debtor fails to produce admissible evidence of disability, the application of the second part of the *Brunner* test is transformed "into an exercise of crystal gazing." In this case, any determination by this Court of the Debtor's future medical condition would be unguided speculation. The Debtor, however, bore the burden of proof on this issue.

Other factors exist indicating that the Debtor's lack of individual income may not continue indefinitely. First, the Debtor has two children age three and six. Within a relatively short period of time both children will be in school, freeing up some of the Debtor's time for employment. Second, the Court has no knowledge of the Debtor's income possibilities because she has only worked a short time during her adult life, and has not even sought employment for a significant period of time. Thus, Debtor's work potential remains untapped. Third,

Debtor is but one credit away from completing the degree for which she sought the student loan. This could present further income possibilities. In looking at the totality of the circumstances, the Court cannot confidently say that the Debtor's financial situation will not improve in the future.

The third and final part of the *Brunner* test is whether the debtor made a good faith effort to repay the loans. *Cheesman*, 25 F.3d at 359, quoting *Brunner*, 831 F.2d at 396. The Debtor claimed that she paid at least Three Hundred Dollars ($300.00) in money orders. However, her total debt is over Eight Thousand Dollars ($8,000.00), making her payments less than four percent of what she owes. Also, the Debtor has only worked eight months of her adult life. Debtor testified that after leaving Sunshine Cleaning, her only attempts to find other employment consisted solely of putting up some flyers. This Court cannot say that the Debtor has made a good faith effort to repay the loan when the Debtor has made such a minimal attempt to obtain employment. The Debtor cannot expect to incur student loan debt for the purpose of entering the workforce, then change course and expect to not be required to repay the loans. Thus, the third part of the test is not met.

In addition to failing each portion of the *Brunner* test, the Court has a further concern about discharging Debtor's student loan. The Commission on the Bankruptcy Laws of the United States noted the reason for the undue hardship exception was "a rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of educational loan debts." *Report of the Commission on the Bankruptcy Law's of the United States*, House Doc. no. 93–17, Pt. I, 93rd Cong., 1st Sess. 140 n. 14 (1973). In the present case, the only listed debt of the Plaintiff is her student loan. Further, the Debtor dropped out of Stautzenberger College with only one credit needed to graduate. The Court has no assurances that if this debt is discharged, the Debtor will not finish her schooling with the majority of the cost forgiven. Thus, the discharge of the student loans in this case could amount to an abuse of the bankruptcy process.

For the foregoing reasons, the Court finds that the student loan debt shall be non-dischargeable. In reaching the conclusion found therein, the Court has considered all of the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

***ORDERED*** that the total balance of Debtor Shawna M. Mitchell's student loans is hereby *NON–DISCHARGEABLE.*