**In re Mary Michelle BROWN, Debtor.**

**Mary Michelle Brown, Plaintiff,**

**v.**

**Educational Credit Management Corp., Defendant.**

**No. 99–3025.**

United States Bankruptcy Court, N.D. Ohio.

March 13, 2000.

was entered, the stay was no longer in effect. *See* 11 U.S.C. § 362(c)(2)(C).

Richard C. Kenney, Jr., Cleveland, OH, for plaintiff/debtor.

Matthew J. Thompson, Columbus, OH, for Deft ECMC.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to Determine the Dischargeability of a Student Loan Debt owed to the Defendant. At the Trial, the Parties were afforded the opportunity to present evidence, and any arguments that they wished the Court to consider in reaching its decision. This Court has now reviewed the arguments of counsel, the evidence presented at Trial, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's repayment of the Student Loan Debt would constitute an undue hardship, and therefore the Plaintiff is entitled to have her Debt to the Defendant discharged pursuant to 11 U.S.C. § 523(a)(8).

### FACTS

On January 12, 1998, Mary Michelle Brown, the Plaintiff and Debtor in this action (hereinafter referred to as the Debtor), petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. As a part of her bankruptcy petition, the Debtor listed a student loan obligation which she had incurred in the late 1980's and the early 1990's while pursuing a degree in art, a degree which the Debtor eventually attained in 1991 from the Cleveland Institute of Art. The origi-

nal amount borrowed by the Debtor on this student loan obligation was Twenty-nine Thousand Five Hundred Twenty-five and 13/100 dollars ($29,525.13), the amount of which became due in July of 1992. However, since that time, no payments have been made on the student loan obligation on account of the Debtor being granted a hardship forebearance on nine (9) consecutive occasions, and therefore the total amount owing on the loan at the time of the Debtor's bankruptcy petition was approximately Fifty-three Thousand dollars ($53,000.00).

On February 12, 1999, in accordance with Bankruptcy Rule 7001, the Debtor filed the instant adversary action against the Defendant, Educational Credit Management Corporation[1] (hereinafter referred to as the Defendant), seeking a determination that her student loan obligation was dischargeable, pursuant to 11 U.S.C. § 523(a)(8), on the basis that repayment of the loan would constitute an undue hardship. In support thereof, the Debtor maintains that she is presently unable to maintain any sort of full time employment so as to earn the income necessary to pay the debt, and that this condition will likely continue for the foreseeable future. Specifically, the Debtor points to the fact that because of physical constraints she is presently able to only work "spot jobs," and the income derived from this work is simply insufficient to pay the student loan debts while at the same time maintaining at least a minimal standard of living. At a trial on this matter, the Debtor, in support of her position, presented the following factual information:

The Debtor is currently forty-three (43) years of age, and is the mother of five (5) adult children, two of whom presently live with her. Since graduating from college, the evidence presented in this case shows that the Defendant has held various positions related to her degree in art. However, according to the Debtor, her ability to perform work in this field, or any other field for that matter, was severely hampered in 1996 when she sustained a neck injury as the result of an automobile accident involving a collision from behind. Although the facts of this case show that no immediate hospitalization was required as a result of her injury, the Debtor testified that soon after the accident she began to suffer from severe pain to her neck, as well as to her spine and arm, and was later diagnosed as having incurred a cervical sprain. Since that time the Debtor testified that, in addition to suffering from pain to the neck, she also suffers from periods of profound dizziness, which can at times be so severe as to make it physically impossible for her to stand up. Once more, the Debtor testified that since her automobile accident she has not been able to sit for long periods of time, or lift the things necessary to provide for her everyday needs. According to the Debtor, these symptoms were further exacerbated when, in April of 1999, she was involved in a second and more severe automobile accident at which time she suffered a concussion, and nearly lost the use of her right arm.

In an effort to combat the symptoms associated with her injuries, the Debtor stated that she has, and is presently undergoing physical therapy, including pain management therapy. However, the Debtor testified that despite the expenditure of thousands of dollars on such treatments, her condition has only continued to grow worse. In addition, further complicating the situation is the fact that in the late 1980's the Debtor was diagnosed as

---

1. The original complaint was brought against USA Group Loan Services, Inc., United Student Aid Funds, Inc., and National City Bank. However, on April 1, 1999, Educational Credit Management Corporation was substituted, pursuant to Bankruptcy Rule 7025, in the stead of United Student Aid Funds, Inc., and pursuant to an agreed entry dated May 4, 1999, National City Bank was dismissed with prejudice from this adversary proceeding. In addition, pursuant to a later agreed entry entered on March 7, 2000, USA Group Loan Services, Inc. was dismissed as a party to this proceeding.

having Epstein Bar Virus, a disease which effects the immune system, and whose symptoms include, but are not limited to: fatigue; headaches; and short term memory loss. According to the Debtor, since 1994 the disease has been dormant, meaning that the symptoms associated with the disease are not present; however, as a cure for the Epstein Bar Virus does not presently exist, the Debtor's condition is subject to change.

To substantiate the foregoing pronouncements, the Debtor presented extensive medical records in which the above-stated facts are, at least, partially documented. In additional support of her case, the Debtor also presented to the Court the following list of itemized expenses, which were stipulated to by the Defendant:

| | |
|---|---|
| Rent | $ 0.00–Debtor presently lives in a house owned by parents, although this may be subject to change. |
| Utilities | |
| Electric | $125.00 |
| Heat | $100.00 |
| Water | $ 63.00 |
| Telephone | $125.00–Debtor has two adult children who live with her |
| Food | $480.00–Debtor has two adult children who live with her |
| Clothing | $ 75.00 |
| Medical Expenses | Extensive post-petition bills related to injuries and ailments (in excess of $20,-000.00) |
| Auto Insurance | $125.00 |
| Transportation | |
| Gas and Oil | $100.00 |
| Maintenance | $ 25.00 |
| Student Loan | $474.97 |

Based upon these figures, and an examination of the Debtor's income which has varied over the last several years from between Five Thousand dollars ($5,000.00) and Fourteen Thousand dollars ($14,-000.00) per year, the Defendant does not contest the fact that the Debtor does not have the current ability to pay her student loan obligation. In addition, given the Debtor's physical condition, in combination with the hardship forebearances extended to the Debtor, the Defendant does not assert that the Debtor was lacking in good faith in her intent to repay the student loan obligation. Instead, in opposition to the Debtor's adversary action to determine the dischargeability of the student loan obligation, the Defendant contends that the Debtor has failed to present sufficient evidence to show that her financially distressed state of financial affairs will likely continue for a significant portion of the loan repayment period, a necessary requirement for receiving an undue hardship discharge under § 523(a)(8). In additional support of this argument, the Defendant has asserted the premise that if the Debtor's injuries are actually as serious as what she contends, then she should or will in the future, receive a sufficient amount of money in a lawsuit to alleviate her financial problems. In response, the Debtor points out that currently a lawsuit does exist for the injuries she suffered in the first auto accident (no present lawsuit exists for the injuries the Debtor sustained in the second auto accident), but that the outcome of this lawsuit is presently uncertain.

### LAW

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole

or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

### DISCUSSION

■ Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

In *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), the Sixth Circuit Court of Appeals employed what has become to be known as the *Brunner* test to determine if a student loan obligation is dischargeable on the basis of undue hardship under § 523(a)(8). In accord therewith, this Court, as it has done in the past,[2] will employ the *Brunner* test to determine the dischargeability of the Debtor's student loan debts.

■ Under the *Brunner* Test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, a debtor must establish that the following three elements are in existence in order to have a student loan discharged on the basis of "undue hardship":

(1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for himself and his dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987). In the present case, the Parties do not dispute the existence of elements one (1) and three (3) from above. Thus, this Court's analysis will be confined to addressing the Debtor's compliance with the second element of the *Brunner* test. In this regard, the Court observes that it is the Debtor who bears the burden to prove, by a preponderance of the evidence, that this element is met. *Vinci v. Pennsylvania Higher Education Assistance Corp. (In re Vinci)*, 232 B.R. 644, 651 (Bankr.E.D.Pa.1999).

■ The second part of the *Brunner* test requires a showing that there exist additional circumstances which show that the debtor's financially distressed state of affairs will persist for a significant portion of the repayment period. *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 734 (Bankr.N.D.Ohio 1999). Stated in another way, a debtor seeking to discharge a student loan debt under the second prong of the *Brunner* test must establish that their current state of financial hardship is likely to be long term. *Muto v. Sallie Mae (In re Muto)*, 216 B.R. 325, 330 (Bankr.W.D.N.Y.1996). In a situation such as this, where health difficulties have contributed to the financial hardship of the debtor, conducting such an analysis necessarily requires the initial resolution of two issues: First, the Court must determine if the debtor's physical condition actually impairs his or her ability to work. *See Sands v. United Student Aid Funds, Inc. (Matter of Sands)*, 166 B.R. 299, 310 (Bankr.W.D.Mich.1994) (under the second prong of the *Brunner* test a debtor must establish by a preponderance of the evidence that the additional circumstances causing the financial distress do in fact exist). Second, if the Court determines that the debtor's physical condition does

---

**2.** *Mitchell v. United States Department of Education (In re Mitchell)*, 210 B.R. 105, 108 (Bankr.N.D.Ohio 1996); *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 734 (Bankr.N.D.Ohio 1999); *Fraley v. U.S. Dept. of Ed. (In re Fraley)*, 247 B.R. 417 (Bankr.N.D.Ohio 2000).

actually impair his or her ability to work, the Court must next ascertain if the debtor's physical condition will likely persist for a significant portion of the student loan repayment period. *In re Green*, 238 B.R. at 734; *see also Salinas v. United Student Aid Funds, Inc. (In re Salinas)*, 240 B.R. 305, 315 (Bankr.W.D.Wis.1999) ("if health difficulties contribute to the debtor's subminimal standard of living, then the prospect for recovery and defrayal of medical expenses within the repayment period is important.").

Addressing the first issue, it seems apparent to the Court that the Debtor's present physical condition is preventing her from obtaining the necessary means by which to repay her student loan obligation. Specifically, in light of the documentation the Debtor introduced into evidence concerning her medical conditions, this Court accepts the Debtor's credible testimony that on account of the injuries she sustained in the two automobile accidents, she is presently unable to work in her chosen field of study, or for that matter in any other field, in a sufficient quantity to enable her to earn enough money to pay her student loan obligation. The second prong of the above analysis, however, is not quite so easily decided as determining whether a debtor's physical condition will likely persist for a significant portion of the student loan repayment period necessarily requires a court to predict future events, and is thus by its very nature speculative. *Kraft v. New York State Higher Educ. Servs. Corp. (In re Kraft)*, 161 B.R. 82, 86 (Bankr.W.D.N.Y.1993).

In this case, no expert medical testimony was offered as to the likelihood that the Debtor would continue to suffer from the effects of vertigo, and the sometimes severe pain that the Debtor has encountered since being involved in the first auto accident. Nevertheless, medical documentation was introduced concerning the various types of medical care the Debtor has undergone to treat, or at least manage, the problems the Debtor is presently encoun-

tering. These medical documents, which describe the Debtor's condition as chronic, show that since 1996 the Debtor's physical condition has not markedly improved. In fact, if anything, the medical documentation submitted by the Debtor, in conjuncture with her trial testimony, shows that her physical condition has gradually grown worse, especially since being involved in the second auto accident. By way of example, the documents submitted by the debtor show that recently the option of surgery was seriously contemplated, but, because of the risk of permanent paralysis, was not undertaken. Also thrown into this mix is the fact that there always exists the distinct possibility that the symptoms associated with the Debtor's infection with the Epstein Bar Virus will again manifest themselves at some point in the future. Therefore, given all these considerations collectively, along with the fact that the Debtor is currently forty-three (43) years of age, the Court finds, in accordance with the second prong of the *Brunner* test, that the Debtor's physical condition will, in all likelihood, persist for a significant portion of the student loan repayment period.

Nevertheless, merely because a debtor establishes that a physical condition impairs their ability to work, and that such a condition will likely persist over a significant portion of the student loan repayment period, does not automatically establish that the debtor has met the second prong of the *Brunner* test. Instead, as the essence of the second prong of the *Brunner* test is its focus on the debtor's future financial condition, a debtor must still establish that their financial condition will not ostensibly improve in the future, an issue which under some circumstances can be very distinct and separate from the issue of the debtor's actual physical well-being. By way of example, a debtor about to come into a significant inheritance would not be entitled to an undue hardship discharge under § 523(a)(8), regardless of their physical health. In this regard, however, remote probabilities must be disre-

garded. *Young v. PHEAA (In re Young)*, 225 B.R. 312, 316–17 (Bankr.E.D.Pa.1998) (internal citation omitted) (one cannot in conducting an analysis under the second prong of the *Brunner* test anticipate that a debtor "will win the lottery, or meet and marry a professional basketball player."). Rather, to determine whether a debtor's financial condition will likely improve, despite an impaired physical condition, a court must determine whether such a possibility is actually realistic.

In accordance with this inquiry, the Defendant puts forth two observations as to why the Debtor has not met the second prong of the *Brunner* test. First, the Defendant contends that it is too early to grant the Debtor a discharge, given that she could potentially realize a significant monetary recovery in her pending lawsuit, which would then give her the means by which to pay her student loan obligation. Second, and closely related to the first argument, the Defendant asserts that if the Debtor's injuries are, in fact, truly debilitating, then the Debtor will undoubtedly realize a significant amount of a recovery in her lawsuit.

▉▉▉ Upon examining these arguments, the Court finds that the latter is without merit as the likelihood of success in a civil lawsuit is not related to the issue of undue hardship under § 523(a)(8). For example, a person at fault for their own physical infirmity would not, in most contexts, be legally entitled to a monetary recovery in a lawsuit, but under appropriate circumstances, such a person would still be entitled to a hardship discharge under § 523(a)(8). With regards to the Defendant's first argument, however, the fact that the Debtor may receive an unspecified amount of proceeds as a result of her involvement in the two auto accidents, does raise the concern of this Court regarding whether the Debtor's distressed state of financial affairs will likely persist for a significant portion of the student loan repayment period. Specifically, given the policies underlying excepting student loans

from discharge, the Court will not permit a debtor who is awaiting a financial windfall, to discharge his or her student loan obligations in anticipation of receiving such a windfall. Nevertheless, in this case, the Court does not find that such a concern, given the following three considerations, rises to the level to warrant a finding that the Debtor has not complied with the second prong of the *Brunner* test.

First, the Court, although not presented with the particular details concerning the Debtor's automobile accidents, is not convinced that the Debtor will actually realize any monetary recovery from her auto accidents, considering that the Chapter 7 Trustee appointed to the Debtor's case, after presumably carefully evaluating the matter, chose not to pursue the Debtor's potential causes of action stemming from the two auto accidents. Second, even if the Debtor does realize some sort of monetary recovery from her auto accidents, it is unlikely, given the significant amount of post-petition medical bills the Debtor has incurred, that the Debtor will ever actually realize a significant amount of personal gain which would thereby enable her to pay the student loan debts. Finally, the Court, given the timing of the events that have transpired in this case, does not believe that the Debtor, by bringing the instant adversary proceeding, is attempting to shirk her obligations to the Defendant in anticipation of receiving a large monetary windfall. For example, absolutely no indication is given in this case that the Debtor attempted to interpose a delay in her state court lawsuit so as to first receive a discharge on her student loan obligations before again proceeding with her state court cause of action.

Accordingly, based upon the foregoing analysis, the Court finds that additional circumstances exist in this case which indicate that the Debtor's distressed state of financial affairs is likely to persist for a significant portion of the student loan repayment period. Consequently, the Debtor has met her burden under the second

prong of the *Brunner* Test, and is therefore entitled to have her student loan obligations to the Defendant discharged under § 523(a)(8). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the student loan obligation of the Plaintiff, Mary Michelle Brown, to the Defendant, Educational Credit Management Corporation, be, and is hereby, determined a DISCHARGEABLE debt pursuant to 11 U.S.C. § 523(a)(8).