**In re Donald E. HOSKINS and Tamara A. Hoskins, Debtor.**

**Donald E. Hoskins, Plaintiff,**

v.

**Educational Credit Management Corporation, Defendant.**

**Bankruptcy No. 02–80897.**
**Adversary No. 02–8061.**

United States Bankruptcy Court, C.D. Illinois.

April 3, 2003.

## *OPINION*

THOMAS L. PERKINS, Bankruptcy Judge.

Before the Court is the adversary complaint filed by DONALD E. HOSKINS, the Debtor (DEBTOR) against EDUCATIONAL CREDIT MANAGEMENT CORPORATION (ECMC), seeking a determination that his student loans are dischargeable under Section 523(a)(8) of the Bankruptcy Code as an undue hardship. The only witnesses to testify at the trial were the DEBTOR and his wife, Tamara Hoskins (TAMARA). The matter was taken under advisement by the Court.

## *FACTUAL BACKGROUND*

The DEBTOR is thirty-six years old and lives with his wife TAMARA, and fifteen year-old son. The DEBTOR has suffered from epileptic seizures since childhood. He last worked in 1986, for the county highway department. The DEBTOR was forced to quit on account of his medical condition. He began receiving Social Security disability in 1989, and presently receives $550.00 per month. In 1992, the DEBTOR attended Illinois Central College, a Peoria-area junior college, taking computer classes and other general classes. He received an associates degree in Arts and Sciences in 1996. The DEBTOR financed his schooling through student loans.[1] The DEBTOR'S student loans became payable in 1997 in payments of $250.00 per month. Unable to afford those payments, the DEBTOR negotiated with the lender and agreed to make reduced payments of $25.00. After receiving three or four payments, the lender contacted the DEBTOR, demanding higher payments.

The DEBTOR had two grand mal seizures in December, 2000. In August of that year, he had a nerve stimulator surgically implanted in order to control his seizures. The implant has been regarded as

---

1. ECMC did not introduce copies of the original notes or any other information concerning the student loans. Nor did the DEBTOR testify as to the repayment period of the loans.

Plaintiff's Exhibit 2, a demand letter from a collection agency, states that the balance on the DEBTOR'S student loans was $19,204.02 as of March 7, 2002.

successful in controlling the seizures. At present, the DEBTOR experiences only small muscular seizures, but he continues to suffer periods of weakness. His condition is adversely affected by cold temperatures. Prolonged exposure would lead to a grand mal seizure. The medication which the DEBTOR continues to take to control his epilepsy affects his memory and causes some stomach problems.

The DEBTOR'S son has Tourette Syndrome, a serious neurological disorder, in addition to Attention Deficit Disorder. He also receives Social Security disability payments of $550.00 per month. He is presently a student at ICC. TAMARA works fifteen hours a week at Goodwill Industries, for $5.50 per hour, netting $150.00 every two weeks and ten hours a week at the Dollar Store, taking home approximately $50.00 each week.

The DEBTOR and TAMARA filed a joint Chapter 7 petition on February 26, 2002. The DEBTOR listed student loans totaling $20,000.00 and TAMARA listed student loans totaling $19,204.02. The DEBTOR brought this action seeking a determination that his student loans were dischargeable as an undue hardship. TAMARA has not sought to discharge her student loans.

The monthly expenses for the DEBTOR and his family are rent of $300.00; gas and electricity of $160.00 to $175.00; water and sewer of $40.00; telephone of $80.00; home maintenance of $50.00; food and nonfood items of $600.00; clothing of $100.00; medical and dental expenses of $20.00; transportation expenses of $100.00; recreation expenses of $50.00; automobile insurance of $50.00; son's school expenses of $80.00; and miscellaneous expenses of $100.00, totaling $1,745.00. The family's total monthly income is $1,758.00, including the two Social Security payments.

The DEBTOR does not have a driver's license.

### ANALYSIS

■ Under Section 523(a)(8), a student loan is not dischargeable in bankruptcy unless "excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." While the term "undue hardship" is not defined in the Bankruptcy Code, the Seventh Circuit has embraced the Second Circuit's three-part *Brunner* test, which requires the debtor to demonstrate by a preponderance of the evidence:

1. That the debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans;

2. That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

3. That the debtor has made good faith efforts to repay the loans.

*Matter of Roberson*, 999 F.2d 1132 (7th Cir.1993)(adopting the three-part test set by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987), the "*Brunner* test"). Because the debtor is required to establish all elements of the test, if the debtor fails to establish any one of the three, the court need not continue with the inquiry. *Roberson*, 999 F.2d at 1135.

### 1. Current Inability to Repay.

■ Under the first prong, the DEBTOR must show that he cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if he is forced to repay the student loan. In making this analysis, the Court must first evaluate the DEBTOR'S

present standard of living based upon his particular circumstances and actual living expenses which appear from the record and then determine whether the forced repayment of the student loan obligation will preclude the DEBTOR from maintaining a minimal standard of living. *In re Barron,* 264 B.R. 833 (Bankr.E.D.Tex. 2001).

ECMC does not seriously dispute that the DEBTOR has met this part of the *Brunner* test, and this Court determines that the DEBTOR has easily satisfied it. The DEBTOR has not worked for sixteen years. The present, combined household income, two-thirds of which is from subsistence disability payments, barely covers their minimal living expenses. In addition, TAMARA scheduled student loans in an amount equal to the DEBTOR'S, which she has not sought to discharge through these bankruptcy proceedings. According to the Statement of Affairs, her 2001 wages were garnished by her student loan creditor in the amount of $3,451.00. The DEBTORS own little property of value, all of which is far below their allotted exemptions.

## 2. Future Inability to Repay.

■ To satisfy the second prong of the *Brunner* test, the DEBTOR must show that additional circumstances exist indicating that the state of affairs is likely to persist for a significant portion of the repayment period of the student loans. The DEBTOR contends that his medical condition, combined with his lack of marketable skills and prolonged period of unemployment, will prevent him from obtaining steady employment which would enable him to make meaningful payments on his student loans. Relying upon the DEBTOR'S improved condition resulting from the surgical implant, ECMC asserts that the DEBTOR has failed to demonstrate

the "certainty of hopelessness" required by the Seventh Circuit in *Goulet v. Educational Credit Management Corp.,* 284 F.3d 773 (7th Cir.2002).

■ ECMC'S concentration upon a showing of a "certainty of hopelessness" is misplaced. The court in *Goulet* was not devising a new standard, nor even tweaking the existing one, but merely repeating a verbalism of long standing. First coined by Bankruptcy Judge Lifland in *In re Briscoe,* 16 B.R. 128, 131 (Bankr. S.D.N.Y.1981), the district court in *Brunner* adopted his articulation that "dischargeability ... should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *In re Brunner,* 46 B.R. 752, 755 (S.D.N.Y.1985), *aff'd* 831 F.2d 395 (2d Cir. 1987). The court in *Brunner* then added, "[s]tated otherwise, the debtor has been required to demonstrate not only a current inability to pay but additional circumstances which strongly suggest that the current inability to pay will extend for a significant portion of the repayment period of the loan." This interpretation was repeated nearly verbatim by the Seventh Circuit both in *Roberson* and in *Goulet.* The test is not, as portrayed by ECMC, that a debtor must demonstrate his future holds an "absolute" certainty of hopelessness, but rather that there be additional circumstances which make it reasonably certain that the debtor's circumstances are unlikely to improve.

■ A serious illness was recognized by the court in *Brunner* as one of the most frequent bases for demonstrating unique or exceptional circumstances justifying a determination of undue hardship. *Brunner, supra.* While expert testimony is not necessarily required to demonstrate a debtor's medical condition, bare allegations will not suffice. *In re Swinney,* 266 B.R. 800 (Bankr.N.D.Ohio 2001); *see, In re*

*Brown,* 247 B.R. 228 (Bankr.N.D.Ohio 2000) (no expert testimony); *In re Pace,* 288 B.R. 788 (Bankr.S.D.Ohio 2003) (testimony of debtor alone insufficient). A debtor's testimony must be supported by some corroborating evidence. Medical records which substantiate the debtor's testimony may be sufficient. *See, Brown, supra; In re Anelli,* 262 B.R. 1 (Bankr. D.Mass.2000). The court must not only determine that the debtor's physical condition actually impairs his ability to work, but also that the debtor's physical condition will likely persist for a significant portion of the repayment period of the student loans. *Brown.*

In the present case, the DEBTOR testified that he has experienced epileptic seizures since he was twelve years old. The DEBTOR'S medical records for the preceding five years were admitted into evidence without objection by ECMC. ECMC offered no medical testimony of its own. The medical records submitted into evidence substantiate the diagnosis of epilepsy and reflect its permanent nature and need for continued maintenance and treatment. Although those records also disclose that the DEBTOR'S epilepsy is currently being controlled by the implant and medication, the DEBTOR continues to receive Social Security disability payments. His continued entitlement to those benefits casts doubt upon ECMC'S prediction that the DEBTOR is presently capable of full-time employment. *See, In re Pena,* 155 F.3d 1108, 1113 (9th Cir.1998)(debtor's testimony of ongoing mental disability which would prevent her future employment corroborated by continuing disability payments); *In re Thomsen,* 234 B.R. 506 (Bankr.D.Mont.1999).

The DEBTOR has continually sought employment, having applied for a position as box boy at a grocery store just weeks before the trial. Prior to that attempt, the DEBTOR applied for a position as a stock person at another grocer but was advised that there were no openings at the time. He believes that his medical condition has precluded his employment, because employers regard him as an insurance risk. Given the DEBTOR'S history of epilepsy, his prolonged unemployment and lack of job skills, this Court finds that it is unlikely that the DEBTOR will be able to procure employment which will enable him to make meaningful payments on his student loans. In three years, when the DEBTOR'S son reaches age eighteen, he may leave home. If, on the other hand, he continues to live with the DEBTOR, he may not be entitled to SSI. The continued garnishment of TAMARA'S student loans will further hamper the DEBTOR'S financial prospects. For those reasons, this Court concludes that the second prong of the *Brunner* test has been met.

### 3. Good Faith Efforts to Repay.

 In order to satisfy the third prong of the *Brunner* test, the DEBTOR must demonstrate that he has made a good faith effort to repay the loans, measured by his efforts to "obtain employment, maximize income and minimize expenses." *Roberson,* 999 F.2d at 1136. This Court concludes that the DEBTOR has met this test as well. Because of his disability, the DEBTOR has not worked for sixteen years. Until the DEBTOR received the surgical implant in August, 2000, his seizures were uncontrolled. He and his family barely maintain a minimal standard of living. To his credit, when the loans first came due, he negotiated with the lender and managed to make a few, reduced payments on his students loans. When the lender insisted on payments in an increased amount, the DEBTOR, with Social Security disability his only income, could not afford the higher payments.

Having carried his burden of proof on each of the three elements of the *Brunner* test, the DEBTOR is entitled to a determination that excepting his student loans from discharge would impose an undue hardship on him and his dependents so that the loans are, therefore, dischargeable.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### ORDER

For the reasons stated in an Opinion issued this day, IT IS HEREBY ORDERED that the DEBTOR'S student loan debt is determined to be dischargeable as an undue hardship pursuant to 11 U.S.C. Section 523(a)(8) and Judgment is entered for the DEBTOR, Donald Hoskins, and against the DEFENDANT, Educational Credit Management Corporation.