In re Christopher S. BERRY, Debtor.

Christopher S. Berry, Plaintiff,

v.

Educational Credit Management Corp. Defendant.

Nos. 99–3202, 99–31502.

United States Bankruptcy Court, N.D. Ohio.

Oct. 4, 2000.

---

361

Louis J. Yoppolo, Toledo, OH, for plaintiff.

Matthew J. Thompson, Columbus, OH, for defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

The instant case comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to determine the dischargeability of certain student loan debts, which at the time of Trial, had an outstanding balance of Sixty-two Thousand Two Hundred Fifty and $^{01}/_{100}$ dollars ($62,250.01). The statutory grounds upon which the Debtor relies

for his cause of action is 11 U.S.C. § 523(a)(8) which provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

For purposes of the Trial held on this matter, the Parties stipulated to the following factual information:

-The Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on April 15, 1999.

-The Debtor received his bankruptcy discharge on August 9, 1999.

-The Debtor was born on November 13, 1949, and is currently Fifty (50) years of age.

-The Debtor currently earns his living in three different part-time temporary positions as an art teacher with the University of Toledo, Bowling Green State University, and from a summer employment position. The Debtor's gross income from wages for 1999 was $19,779.30, for 1998 was $16,657.60, for 1997 was $19,542.53, for 1996 was $19,340.00, and for 1995 was $16,283.00.

-The Debtor graduated from College at the University of Toledo in 1989 with a major in Art. The Debtor also has a Masters Degree in Fine Arts from the University of North Dakota.

-In order to finance his graduate degree, the Debtor took out student loans totaling $33,775.01. These loans are the subject of the current litigation with the Defendant, who is the current holder of the Debtor's student loan obligations.

-The Debtor has been making payments on his loans, over time, in varying amounts. The Debtor, since 1995, has made loan payments varying from $57.32 presently, to $40.00 per month. All total, the Debtor has made payments on the loans in question for between four (4) to five (5) years.

-As of August 1999, the Debtor, in order to fully amortize these loans, would have to make payments of $521.32 for 237 months, and another final payment of $484.51.

-The Debtor has a current net monthly income of $1,709.55 from his three different teaching positions.

In addition to the foregoing information, the Court, with regards to the evidence presented at the Trial, makes the following findings of fact in accordance with Bankruptcy Rule 7052(a):

-The Debtor, although in generally good health, has been recently experiencing prostate problems.

-The Debtor has no health insurance.

-The Debtor, since 1992, has applied for, but has been rejected for well over One Hundred (100) full-time teaching positions at various colleges and universities throughout the country. The Debtor continues to this day to search for employment as a teacher for a college or university, and incurs monthly expenses as a result.

-The Debtor has not seriously pursued work outside his field of study.

-The Debtor, prior to obtaining his masters degree in art, worked at various jobs. At some of these prior jobs, which included a four (4) year tour of duty in

the Navy, the Debtor was conferred with a relatively large degree of responsibility.

-The Debtor has made up any shortfall in his income by taking loans from his mother. These loans, which are in essence gifts, have for the past few years totaled approximately $2,600.00 dollars per year.

-The Debtor, who is without question very talented in his field of study, has on past occasions been able to sell his artwork. The Debtor, however, does not devote a lot of energy in this direction.

-The Debtor has no dependents.

-The Debtor's itemized list of reasonably monthly expenses are as follows:

| | |
|---|---|
| Rent | $450.00 |
| Electric | $ 55.00 |
| Telephone | $ 40.00 |
| Food | $300.00 |
| Clothing | $ 30.00 |
| Laundry | $ 10.00 |
| Medical Expenses | $200.00 |
| Auto Insurance | $ 57.50 |
| Disability Insurance | $ 25.00 |
| Gas for Auto | $125.00 |
| Auto Maintenance | $ 50.00 |
| Auto Payment | $239.00 |
| Entertainment | $ 25.00 |
| Art Supplies | $ 50.00 |
| Job Seeking Expenses | $ 50.00 |
| Total | 1706.50 |

## LEGAL ANALYSIS

For reasons of public policy, Congress chose to exclude certain types of debts from the umbrella of a bankruptcy discharge. *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 732 (Bankr.N.D.Ohio 1999). Specifically relevant to this case is the type of debt contained in § 523(a)(8) of the Bankruptcy Code which provides that those debts incurred to finance a higher education are excepted from the scope of a bankruptcy discharge unless the debtor can establish that repayment of the debt would constitute an undue hardship. In enacting § 523(a)(8), however, Congress did not actually define the term "undue hardship," instead leaving this task to the courts. Thus, as might be expected, there has developed a variety of tests to determine whether "undue hardship" exists in any given factual situation. However, with regards to all the tests developed by the courts, it is clear that the phrase "undue hardship" means, at the very least, more than the garden-variety financial hardship experienced by the vast majority of debtors who seek bankruptcy relief. *Pichardo v. United Student Aid Funds, Inc. (In re Pichardo)*, 186 B.R. 279, 282 (Bankr. M.D.Fla.1995).

In *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), the Sixth Circuit Court of Appeals employed what has become to be known as the Brunner Test to determine if a student loan obligation is dischargeable on the basis of undue hardship under § 523(a)(8). In accordance therewith, this Court, as it has done in the past, will employ the Brunner Test in this case to determine the dischargeability of the Debtor's student loan obligations. Before beginning with this analysis, however, it should be noted that it is the Debtor who bears the burden to prove, by a preponderance of the evidence, that all the elements of the Brunner

Test are complied with. *Brown v. Educ. Credit Management,* 247 B.R. 228, 233 (Bankr.N.D.Ohio 2000) *citing Vinci v. Pennsylvania Higher Education Assistance Agency (In re Vinci),* 232 B.R. 644, 651 (Bankr.E.D.Pa.1999).

■ Under the Brunner Test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.,* a debtor must establish that the following three elements are in existence in order to have a student loan discharged on the basis of "undue hardship":

(1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for himself and his dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987). With regards to these requirements, the Defendant acknowledged at the Trial held on this matter, that the factual circumstances surrounding this case demonstrate, in conformity with the third prong of the Brunner Test, that the Debtor acted in good faith in his dealings with the Defendant. In addition, with respect to the first prong of the Brunner Test, the Court finds that the Debtor has met his burden thereunder considering that the Debtor's monthly income is just a little more than three dollars ($3.00) higher than the Debtor's reasonable monthly expenses. Accordingly, given the Debtor's compliance with the first and third prongs of the Brunner Test, the Court's analysis will be confined solely to addressing whether the circumstances of the Debtor's case prescribe a finding that the second prong of the Brunner Test has been met.

As just enumerated above, the second prong of the Brunner test requires that there exist additional circumstances which indicate that the debtor's distressed state of financial affairs is likely to persist for a significant portion of the student loan repayment period. In support of his compliance with this requirement, the Debtor asserts that given the fact that he has applied for well over One Hundred (100) teaching positions at various college and universities from around the country, without receiving one job offer therefrom, clearly demonstrates that his distressed state of financial affairs is likely to continue for the foreseeable future. The Defendant, however, strongly disputes this assumption, arguing instead that given the Debtor's artistic talent, the Debtor's financial situation is bound to improve at some time over the course of the student loan repayment period.

■ The purpose of the second prong of the Brunner Test is to ensure that the financial hardship the debtor is experiencing is actually undue. *In re Green,* 238 B.R. at 735. However, any analysis involving the second prong of the Brunner Test is, by its very nature, speculative as the Court is being called upon to predict future events. As observed by the bankruptcy court in *Goranson v. Pennsylvania Higher Educ. Assistance Agency (In re Goranson),* "the difficulty of the statute [ (11 U.S.C. § 523(a)(8) ] and of the second prong of the Brunner test is its linking of 'undue hardship' with an effort by the Court to predict the future.)" 183 B.R. 52, 55–56 (Bankr.W.D.N.Y.1995).

■ Nevertheless, with competent evidence, a court can make a reliable predication of future events. In this regard, and as the Debtor has argued, probably one of the best indicators of what will occur in the future, comes from events that

have occurred in the past. *See, e.g., In re Hines*, 64 B.R. 684, 686–87 (Bankr.D.Colo. 1986) (holding that although not absolutely accurate, historical evidence constitutes a valuable indicator as to the probability of future events). Notwithstanding, past events in this respect are only relevant to the extent that the circumstances causing the debtor's distressed state of financial affairs are the result of events which are clearly out of the debtor's control. This is because fundamental to the concept of "undue hardship" under § 523(a)(8) is the notion that a debtor has done everything in his power to improve his financial situation. *Hollister v. University of North Dakota, Nebraska Student Loan Program, Inc. (In re Hollister)*, 247 B.R. 485, 491 (Bankr.W.D.Okla.2000) (holding undue hardship encompasses a notion that a debtor's condition must result from factors beyond his control). For example, while an unexpected illness or accident would clearly constitute an event outside the debtor's control, a lifestyle choice, although it may be admirable, would not. In this regard, the Court, although agreeing that the Debtor has made a concerted effort to find a permanent job to relieve his financial difficulties, is troubled by a couple of aspects of the Debtor's case.

First, the evidence presented in this case seems to strongly indicate that the Debtor has not made a strong effort to sell his artwork in a manner that is aimed at generating revenue. In making this observation, the Court is not trying to imply that the Debtor can, in fact, sell more of his paintings. Rather, the Court is simply troubled by the fact that the Debtor has not made a considerable effort to do so.

Secondly, and more importantly, the Court is troubled by the Debtor's act of limiting his job search activities to solely teaching positions at college and/or universities. Simply put, while the Debtor may highly desire a college/university teaching position, the Court does not find it credible that such positions are the only types of positions the Debtor is qualified to take. For example, surely the Debtor would, with perhaps a little bit more training, be qualified to teach art at an elementary or high school within the United States. Moreover, the Court must believe that the Debtor, being heavily involved in the art world, would know of other possible art-related opportunities available throughout the United States. Furthermore, considering that the Debtor has in the past held responsible positions, there is no reason to doubt that the Debtor, albeit with some effort, could obtain higher paying work outside his chosen filed of study. In this respect, the Court, while sympathizing with the Debtor's desire to work in an art-related field, is not of the position that the Defendant, having financed the Debtor's higher education, is a guarantor that the Debtor would find something within his chosen field of study.

Consequently, given the foregoing concerns, the Court is not persuaded that the circumstances causing the debtor's distressed state of financial affairs are entirely the result of events which are outside of the debtor's control. Accordingly, the Court cannot find that the Debtor has carried his burden under the second prong of the Brunner Test, and thus the Debtor is not entitled to receive a hardship discharge of his student loan obligations to the Defendant in accordance with 11 U.S.C. § 523(a)(8). In coming to this conclusion, the Court does recognize that there exists the possibility that the Debtor will suffer from health problems in the future, which could, in turn, affect the Debtor's ability to maintain employment. However, at this time, the Court finds the occurrence of such an event to be sufficiently remote so as not to change the Court's conclusion regarding the Debtor's

compliance with the second prong of the Brunner Test.

 Notwithstanding the foregoing holding, a debtor encumbered with a student loan obligation, who has not complied with all of the requirements of the Brunner Test, is not necessarily precluded altogether from receiving some type of relief from his or her student loan obligations. In particular, this Court has, on past occasions, permitted student loan debtors to partially discharge their student loan obligations pursuant to this Court's equitable powers under 11 U.S.C. § 105(a).[1] *See, e.g., Gammoh v. Ohio Student Loan Comm'n (In re Gammoh),* 174 B.R. 707, 709 (Bankr.N.D.Ohio 1994). This position was recently sanctioned by the Sixth Circuit Court of Appeals in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby),* when the Court stated:

> Although the bankruptcy court should not have discharged the [debtor's] entire student loans, we believe it had the power to take action short of total discharge. We find this authority in 11 U.S.C. § 105(a) which permits the bankruptcy court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,' so long as such action is consistent with the Bankruptcy Act. In a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act.

144 F.3d 433, 438–39 (6th Cir.1998) (internal citations omitted). However, not all debtors with student loan obligations are necessarily entitled to relief. Instead, before this Court will invoke its equitable powers under § 105(a) to partially discharge a student loan debt, the Court must be convinced that the equities of the situation tip distinctly in favor of the debtor. *Fraley v. U.S. Dept. of Ed. (In re Fraley),* 247 B.R. 417, 422 (Bankr.N.D.Ohio 2000). In this regard, the Court, as might be expected, has taken into account a number of factors. However, probably one of the most important considerations in this respect concerns whether the debtor has, in conformity with the third prong of the Brunner Test, made a good faith effort to repay the student loans. The reason for this is that § 105(a), being an equitable provision, requires that a debtor come to the court with clean hands. In other words, one who seeks equity must also do equity.

 In addressing the good faith element of the Brunner Test, this Court has held that the following factors should be considered:

(1) whether the debtor has attempted to repay the debt;

(2) the length of time after the student loan becomes due that the debtor seeks to discharge the debt;

(3) the percentage of the student loan debt in relation to the debtor's total indebtedness;

(4) the debtor's attempts to find suitable employment.

*Green v. Sallie Mae Servicing Corp. (In re Green),* 238 B.R. 727, 736 (Bankr.N.D.Ohio 1999). Upon applying these factors to the instant case, the Court finds (as the Defen-

---

1. Section 105(a) of the Bankruptcy Code provides, in pertinent part that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

dant conceded with respect to this Court's analysis under the Brunner Test) that the Debtor did, in fact, make a good faith effort to repay his student loan obligations. In particular, the Court makes the following observations: (1) the Debtor for the past four (4) or five (5) years has made regular payments on his student loan obligations; (2) the Debtor did not immediately seek to discharge his student loan obligations after they became due; and (3) the evidence presented at Trial demonstrates that the Debtor has made repeated, albeit unsuccessful, attempts to find a better paying job. Accordingly, based upon the Debtor's good faith effort to repay his student loan obligations, the Court finds it appropriate, under the particular facts of this case, to invoke its equitable powers under 11 U.S.C. § 105(a) so as to partially discharge the Debtor's student loan obligations. As to the amount of debt that should be discharged, the Court finds that the Debtor should be required to repay, at a minimum, Thirty-three Thousand Seven Hundred Seventy-five dollars ($33,775.00), which represents the original amount of the Debtor's student loan obligation. In addition, the Court finds it equitable that this amount must be paid at a minimum rate of One Hundred Eighty-seven and $^{64}/_{100}$ dollars ($187.64) per month, which represent a fifteen (15) year repayment schedule. In making this determination, the Court, while taking into consideration the Debtor's age, considered the fact that the Debtor received, in full, the education he desired.

Accordingly, it is

**ORDERED** that the student loan obligation of the Plaintiff, Christopher S. Berry, to the Defendant, Educational Credit Management Corp., be, and is hereby, determined to be a nondischargeable debt in bankruptcy pursuant to 11 U.S.C. § 523(a)(8).

It is **FURTHER ORDERED** that the Plaintiff's nondischargeable student loan obligation to the Defendant be, and is hereby, determined to be Thirty-three Thousand Seven Hundred Seventy-five dollars ($33,775.00) pursuant to 11 U.S.C. § 105(a). Further, no interest shall accrue on this obligation while the Plaintiff is in compliance with all the terms of this Order.

It is **FURTHER ORDERED** that the Defendant provide to the Plaintiff an address as to where payments on the Plaintiff's nondischargeable obligation may be tendered.

It is **FURTHER ORDERED** that the Plaintiff's minimum monthly payment obligation to the Defendant is hereby determined to be One Hundred Eighty-seven and $^{64}/_{100}$ dollars ($187.64) per month. This obligation will become due on the first day of every month, commencing upon the Defendant's compliance with the above order, and will last until the amount determined nondischargeable herein is paid in full.