ELECTRONIC CITATION: 2003 FED App. 0004P (6th Cir.)

File Name: 03b0004p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: MICHAEL J. OYLER, | ) | |
| Debtor. | ) ) | |
| _____ | ) | |
| | ) ) | |
| MICHAEL J. OYLER, | ) ) | |
| Appellee, | ) ) | |
| v. | ) | No. 03-8001 |
| | ) ) | |
| EDUCATIONAL CREDIT MANAGEMENT CORP., | ) ) ) | |
| Appellant. | ) ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Canton.
No. 99-62796, Adv. P. No. 02-6090.

Argued: August 6, 2003

Decided and Filed: October 23, 2003

Before: AUG, LATTA, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Matthew J. Thompson, NOBILE, NEEDLEMAN & THOMPSON, Columbus, Ohio, for Appellant. Donald M. Miller, Canton, Ohio, for Appellee. **ON BRIEF:** Matthew J. Thompson, NOBILE, NEEDLEMAN & THOMPSON, Columbus, Ohio, for Appellant. Donald M. Miller, Canton, Ohio, for Appellee.

––––––––––––––––––––

## OPINION

––––––––––––––––––––

STEVEN W. RHODES, Chief Judge.  Educational Credit Management Corp. appeals the bankruptcy court's order discharging Oyler's student loan debt pursuant to 11 U.S.C. § 523(a)(8).  Educational Credit Management Corp. argues that the bankruptcy court erroneously gave too much weight to the fact that Oyler's student loans were for an education in a low-paying field, the ministry, and the fact that Oyler's circumstances are not likely to continue.  Upon examining the totality of the facts and circumstances of the case, the Panel holds that Oyler is entitled to a discharge based on undue hardship.

## I.   ISSUE ON APPEAL

The issue before the panel is whether the bankruptcy court erred in determining that the debt should be discharged pursuant to 11 U.S.C. § 523(a)(8).

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal.  The United States District Court for the Northern District of Ohio has authorized appeals to the BAP.  *Dolph v. Penn. Higher Educ. Assistance Agency (In re Dolph)*, 215 B.R. 832, 834 (B.A.P. 6th Cir. 1998).  A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1).  For purposes of appeal, an order determining the discharge of a student loan under 11 U.S.C. § 523(a)(8) is a final order.  *Id*.

A determination that a student loan poses an undue hardship and is subject to discharge under 11 U.S.C. § 523(a)(8) is a mixed question of law and fact.  The conclusions of law are subject to de novo review.  *Cheesman v. Tenn. Student Assistance Corp.* (*In re Cheesman*), 25 F.3d 356, 359 (6th Cir. 1994).  De novo means that the reviewing court is "deciding the issue as if it had not been heard before with no deference being given to the trial court's conclusions of law."  *In re Falvo,* 227 B.R. 662, 664 (B.A.P. 6th Cir. 1998).

Findings of fact are reviewed under the clearly erroneous standard.  FED. R. BANKR. P. 8013; FED. R. CIV. P. 52.  A finding of fact is clearly erroneous when the reviewing court

is "left with the definite and firm conviction that a mistake has been committed." *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436 (6th Cir. 1998) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S. Ct. 525 (1948)).

### III.   FACTS

On September 9, 1999, Oyler filed a chapter 13 bankruptcy petition. On June 13, 2002, Oyler commenced an adversary proceeding seeking to discharge his student loans pursuant to 11 U.S.C. § 523(a)(8). The student loans at issue consist of four separate loans obtained by Oyler from December, 1991, to December, 1992, to fund his education at Fuller Theological Seminary. Educational Credit Management Corporation (ECMC) assumed the student loans from Great Lakes Higher Education Corporation.

During the trial of this adversary proceeding, four witnesses testified. The witnesses were Oyler, his wife, Eric Walch, a retired pastor, and Lee Anderson, a minister who recently began his own congregation. ECMC did not call any witnesses.

Oyler, age 48, is a licensed pastor and current leader of a Messianic Jewish congregation that he began in June 1998. He is married and has three children. For the past two years, the annual income of this family of five has been less than $10,000. The family lives in an apartment, which is paid for by the congregation. Oyler is supposed to receive an allotted salary of $1,200 per month. However, the actual amount Oyler receives varies depending on the amount of contributions received by the congregation. The family does not have any health insurance. Oyler has experienced four retinal detachments. These occur from a medical condition known as scleral buckle. No testimony or evidence was admitted about the prognosis of his condition. The only debts scheduled in the chapter 13 plan are the student loans to ECMC. At the time of trial, Oyler was current in his monthly payments of $50 into the chapter 13 plan.

There were four exhibits admitted into evidence. Exhibit A consists of copies of Oyler's tax returns. Exhibit B is a statement from the office manager of the congregation about Oyler's salary. Exhibit C is a list of Oyler's income and expenses. Exhibit 1 is an itemized statement of the outstanding amount of the student loans. As of June 26, 2002, the student loans totaled $38,978.20.

At the conclusion of the trial, the bankruptcy judge rendered an oral decision concluding that Oyler had established that repayment of the student loans would create

an undue hardship and therefore entered a judgment discharging the debt.  The bankruptcy court considered Oyler's current financial situation, the likelihood that the financial situation would continue, whether Oyler exercised good faith, the ability of Oyler or his wife to obtain outside employment, Oyler's lifestyle choice, and the use of the loans for education for the ministry.  ECMC filed a timely appeal.

## IV.    DISCUSSION

Section 523(a)(8) of the Bankruptcy Code provides:

> A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

"Congress has not defined 'undue hardship,' leaving the task to the courts." *Hornsby*, 144 F.3d at 437.  The United States Court of Appeals for the Sixth Circuit has adopted a "multiple factor" approach to applying § 523(a)(8).  In *Cheesman*, the court started with, then expanded on, the three-prong analysis announced by the Second Circuit in its *Brunner* case:

> One test requires the debtor to demonstrate "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period ...; and (3) that the debtor has made good faith efforts to repay the loans."

*Id.*, 25 F.3d at 359 (quoting, *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395  (2d Cir. 1987)).  Other factors that may be considered include "'the amount of

the debt ... as well as the rate at which interest is accruing and the debtors' claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents.'" *In re Hornsby*, 144 F.3d at 437 (quoting *Rice v. United States* (*In re Rice*), 78 F.3d 1144, 1149 (6th Cir. 1996)).

In the present case, the bankruptcy court considered the factors identified in *Cheesman* and concluded that Oyler had met all three factors.

ECMC contends that the evidence does not support the bankruptcy court's determination that Oyler met the three factors of the *Brunner-Cheesman* test and that the court incorrectly applied the test by placing a great deal of weight on the fact that the loans were for an education in the ministry. In particular, ECMC takes issue with the court's determination that the facts demonstrate that Oyler's circumstances are likely to continue.

It is clear that the bankruptcy court's decision to discharge the debt was strongly influenced by the fact that the student loans were obtained to finance Debtor's education to become a minister. In discussing the factors in favor of discharging the loans, the bankruptcy court stated:

> [W]hat seems the most compelling is the fact that the loans were for the ministry. And so if we're going to make guaranteed loans for the ministry, it's hard to believe that we can't anticipate that people are going to wind up in low-paying situations or going to be employed in callings that aren't going to be well-paid. If the loans had been for a law school or for something else I think it might be a different question. I don't know how that question would come out. But it seems a much simpler question given that the loans were for the ministry.

(Trans. of 12/16/2002 Hrg. at 78.)

ECMC argues that this language indicates that the bankruptcy court did not properly apply the second prong of the *Brunner/Cheesman* test. ECMC argues that Oyler did not establish that his circumstances would continue to persist for the foreseeable future because the bankruptcy court refused to consider that Oyler could have simply obtained a higher paying job either with a different congregation or in another field.

Upon review of the entire record, the Panel concludes that the bankruptcy court properly considered the totality of the circumstances, as required by *Cheesman*. Contrary to ECMC's assertion, *Cheesman* did not adopt the *Brunner* test. Rather, *Cheesman* indicates that the *Brunner* test is one of several that can be used to determine if an undue hardship exists.

Furthermore, *Cheesman* makes it clear that a debtor's choice to work in a low-paying field is not by itself an indication of bad faith, nor should it be used against a debtor in an evaluation of undue hardship. In *Cheesman*, the court noted that the debtors "chose to work in worthwhile albeit low-paying professions."[1] *Id.*, 25 F.3d at 360. The debtors' income was slightly higher than poverty level and they maintained a frugal lifestyle. Despite the fact that the debtor-husband testified that he hoped for a promotion and the debtor-wife testified that she was actively seeking employment as a teacher's aide, the court of appeals found that "there [was] no indication that [their] financial situation [would] improve in the foreseeable future." *Id*.

In the present case, Oyler's income is well below poverty level. Oyler's family of five lives a very frugal lifestyle. They live in an apartment, drive used, high-mileage vehicles, and wear donated clothing. They rarely eat out and budget $400-450 per month for food expense. Moreover, Oyler testified that he was completely committed to his calling as a minister in his Messianic Jewish congregation and that his circumstances would be likely to continue for the foreseeable future. Additionally, two pastors testified that Oyler was committed to his calling and that his circumstances are unlikely to change.

The bankruptcy court held that in the totality of the circumstances, Oyler was entitled to discharge his student loan debt. The bankruptcy court properly noted:

> The poverty level for a family of five is twenty-one thousand one hundred and eighty dollars ($21,180). And they're a long way from that. So the question isn't what their current circumstances are, I think the question is the likelihood of this

---

1Unlike the bankruptcy court, we conclude that the fact that the low-paying profession in this appeal is in the ministry should have no bearing on our decision. Rather we focus on "whether [Oyler] has attempted to maximize his income by seeking or obtaining stable employment commensurate with his education background and abilities." *Rice*, 78 F.3d at 1149-50.

situation to continue – that this situation is likely to continue. And even if it was to improve substantially, I don't think it would change much. Because even if there was substantial improvement, the amount of things that the family would need and/or be viewed as being legally entitled to would be so large that it would require a massive improvement before we would say there would be any income available for the repayment of this debt.

(Tr. 12/16/2002 Hrg. at 76-77.) Based on our review of the record, the Panel agrees that Oyler carried his burden of proving that he is entitled to a discharge of his student loans. Simply stated, Oyler's financial circumstances make it an undue hardship for him to repay this student loan of almost $40,000, and the record suggests no reason to believe that these circumstances are likely to change.

## V.   CONCLUSION

The bankruptcy court's factual findings regarding Oyler's circumstances are supported by the record and are not clearly erroneous. Further, the bankruptcy court's conclusion that under these circumstances, repayment of the debt would be an undue hardship is not erroneous. Accordingly, the bankruptcy court order holding the debt dischargeable pursuant to 11 U.S.C. § 523(a)(8) is **AFFIRMED**.

JENNIE D. LATTA, Bankruptcy Judge, dissenting.

Because I believe that the majority fails to appreciate the development in the legal standard for determining the presence of an undue hardship that has occurred since the decision in *Cheesman*, and because I do not conclude that the facts of this case demonstrate an undue hardship, I respectfully dissent.

The majority of the Panel places great weight upon the fact that the *Cheesman* court found no evidence that the debtors had acted in bad faith in seeking to discharge their student loans even though they had chosen low-paying professions. *Cheesman*, 25 F.3d at 360. The majority asserts that *Cheesman* -prohibits consideration of a debtor's choice of employment in determining the presence of undue hardship. I find no such prohibition in *Cheesman.* To the contrary, in *Rice*, the court announced that one of the relevant factors to be considered is "whether the debtor has attempted to maximize his income by seeking employment commensurate with his educational background and abilities. *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir. 1996). In *Hornsby,* the court included the factors articulated in *Rice* among those that are relevant in evaluating discharge of ordinary student loans even though *Rice* involved the more stringent unconscionability standard applied in discharge of Health Education Assistance Loans. *See Hornsby*, 114 F.3d. 433, 437 n.7. While I do not disagree with the majority's conclusion that Oyler has acted in good faith, I believe that the majority has failed to properly consider Oyler's employment choices in evaluating his entitlement to a discharge of his student loans. Specifically, I find that Oyler failed to prove that he has attempted to maximize his income and failed to prove that "additional circumstances" make his current state of affairs likely to continue.

The record reflects that the Oylers have voluntarily undertaken a very simple and frugal lifestyle in pursuance of Mr. Oyler's ministry. While it is true that Oyler's actual salary is well below federal poverty guidelines, the basic needs of the family are met by the provision of shelter, clothing, and food by Oyler's congregation. It is significant that after graduating from Fuller Theological Seminary, but before undertaking his present ministry, Oyler was employed as a furniture salesman, a position that enabled him to repay $2,000-$3,000 of his student loan debt over a one-year period. The record also indicates that Oyler has a musical background, has worked as an audio engineer, and at one time, owned his own business. Oyler has multiple job skills and a masters degree from a well-

recognized theological seminary. He has no significant health problems that prevent him from working; indeed, he claims to be able to work sixty to seventy hours per week. Oyler offered no proof that he had been unable to find better paying employment, either within his chosen field or outside of it. Oyler offered no proof that his arrangement with his current employer prohibits him from seeking supplemental income from other sources, other than his unsupported statement that he simply has no time to do so.

Oyler very candidly explained that he is in essence starting a new business. He did not accept a position with an existing congregation or ministry, but instead decided to return to Canton, Ohio to launch a new congregation. It is significant that he chose to locate his ministry in a community that is not familiar with Messianic Judaism. Although Oyler is licensed by the International Church of Foursquare Gospel, he apparently receives no denominational support for this new church endeavor. One might say that the failure of this endeavor to provide adequate support for Oyler and his family is the result of a poor business plan.

While Oyler has no present plans to abandon his ministry, there is nothing to prevent him from doing so. He has changed occupations in the past and could do so again. He has many marketable skills and no medical impairment. Further, should he continue to pursue his ministry, it is hoped and expected that his long hours of work will eventually result in the growth of his congregation and consequent increase in his income. Throughout his Chapter 13 case, Oyler has remained current in his plan payments of $50 per month. He has no other debts than his student loans. There is nothing in the record to indicate that he cannot continue to make payments of at least $50 per month on his student loans in the future, and nothing to indicate that his current ability to pay *only* $50 per month will persist over the remaining repayment period of his student loans. "[T]he dischargeability of student loans should be based upon the *certainty of hopelessness*, not simply a present inability to fulfill financial commitment." *In the Matter of Roberson,* 999 F.2d 1132,1136 (7th Cir. 1993) quoted with approval in *Goulet v. Educational Credit Mgmt. Corp.*, 284 F.3d 773, 778 (7th Cir. 2002) (emphasis added in *Goulet*).

"[F]undamental to the concept of undue hardship under 523(a)(8) is the notion that a debtor has done everything in his power to improve his financial condition" and that his "distressed state of financial affairs is the result of events that are clearly out of the debtor's control." *Berry v. ECMC (In re Berry),* 266 B.R. 359, 365 (Bankr. N.D. Ohio 2000)*.* Events

clearly out of the debtor's control generally involve an unexpected illness, injury or disability of the debtor or his dependents. *Id.* Significantly, for purposes of this case, "hardships that are both foreseeable and voluntarily assumed" as a result of the "[i]nformed free choice of one's chosen pursuits" do not qualify as "undue" hardships for purposes of student loan discharge. *Fischer v. State Univ. N.Y.* (*In re Fischer*), 23 B.R. 432, 434 (Bankr. W.D. Ky. 1982) cited with approval by *In re Paolini*, 124 F.3d 199, 1997 WL 476515, **5 (6th Cir. 1997).[1]

According to the *Fischer* court, "voluntary selection of a curriculum leading to an unremunerative occupation does nothing to enhance a claim of undue hardship." 23 B.R. at 434. Consequently, discharge of student loans has been denied to musicians, social workers, teachers, nutritionists, psychiatrists working in poverty areas, and poets. *Id.*

I know of no other case in which a court has agreed to support a debtor's entrepreneurial efforts through discharge of student loans. The focus of enquiry under § 523(a)(8) should be upon the *capacity* of the debtor to repay his or her student loans without undue hardship. Because I believe that Oyler clearly has that capacity, I would reverse the decision of the bankruptcy court.

---

1"Although not binding [precedent], unpublished decisions of the Sixth Circuit may be cited if persuasive and no published decisions will serve as well." *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 210, n.2 (B.A.P. 6th Cir. 1998). Unlike the debtor here, the debtor in *Paolini* had been diagnosed with obsessive-compulsive disorder, a circumstance beyond her control. Nevertheless, the Sixth Circuit determined that although her condition currently impaired her ability to sustain gainful employment, there was no showing that it would necessarily impair her ability to work in the future and thus her student loans were not discharged.